**Melvin WILNER, d/b/a Wilner Construction Company, Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 92–5161.

United States Court of Appeals, Federal Circuit.

May 26, 1994.

Melvin Wilner, pro se.

Brad Fagg, Attorney, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for defendant-appellant. With him on the Rehearing Petition and Suggestion for Rehearing In Banc were Stuart E. Schiffer, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson, Deputy Director. Frank W. Hunger, Asst. Atty. Gen., Commercial Litigation Branch, Dept. of Justice, Washington, DC, was on the corrected

In Banc brief. Of counsel was Sharon Y. Eubanks, Asst. Director.

Before ARCHER, Chief Judge,* RICH, Circuit Judge, BENNETT, Senior Circuit Judge, NIES, NEWMAN, MAYER, MICHEL, PLAGER, LOURIE, CLEVENGER, RADER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

The United States appeals from the June 26, 1992 judgment of the United States Claims Court.[1] Following a trial, the Claims Court (i) awarded Melvin Wilner, d/b/a Wilner Construction Company (Wilner), an additional $26,271.49 plus interest on his claim for delay compensation under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1988 & Supp. IV 1992); and (ii) denied the government's claim for the return of certain sums previously paid to Wilner.[2] On May 24, 1993, a divided panel of this court affirmed the judgment of the Claims Court.[3] The government filed a petition for rehearing and suggestion for rehearing in banc. On August 2, 1993, we accepted the suggestion for rehearing in banc, vacated the judgment of the panel, and withdrew the panel opinion. We now vacate the judgment of the Court of Federal Claims and remand the case with instructions.

## BACKGROUND

Wilner was awarded a contract by the United States Department of the Navy to construct an Operational Trainer Facility at Camp Pendleton, California. *Wilner*, 26 Cl. Ct. at 262. Although the contract called for a completion date of October 1, 1986, the project experienced delays which postponed its completion by 447 calendar days. *Id.* Wilner submitted a claim to the Navy's contracting officer, alleging compensable government-caused delay to the completion of the project. *Id.* at 272. On August 1, 1989, Contracting Officer William N. Lindstrom issued a final decision on Wilner's delay claim. *Id.* Finding that Wilner was entitled to 260 calendar days of compensable delay, the contracting officer credited Wilner with delay-based compensation of $133,094.79. After deducting previous unilateral increases to the contract price to avoid double compensation, he made a net award to Wilner of $17,259.46 plus interest for the delay. *Id.* at 273–74.

Dissatisfied with the contracting officer's award, Wilner brought an action on the claim in the Claims Court under the CDA, contending that government conduct was the legal cause of all of the delay to the project, from the original contract completion date through the date the Navy accepted the project as completed. Wilner's claim was directed mainly to alleged delay costs arising from duct revision work, open web joist (OWJ) revision work, and smoke detector work. *Id.* at 263.[4] On its part, the government asserted that it was entitled to return of the $133,-094.79 that the contracting officer had credited to Wilner, since Wilner could not establish that he was entitled to any delay compensation.

At trial, Wilner presented evidence relating to the duct revision work, the OWJ revision work, and the smoke detector work. *Id.* at 264–72. Although the Claims Court found that the government was responsible for delay to each of these activities, it determined that the evidence presented by Wilner was

---

* Judge Archer assumed the position of Chief Judge on March 18, 1994.

1. The Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516, changed the name of the United States Claims Court to the "United States Court of Federal Claims." Except where the context requires otherwise, we refer to the trial court by the name which it had while this matter was pending before it.

2. *Wilner v. United States,* 26 Cl.Ct. 260 (1992).

3. *Wilner v. United States,* 994 F.2d 783 (Fed.Cir. 1993) (vacated).

4. Wilner also requested compensation for weather-related delays. Wilner contended that, but for delays attributable to the government, he would have completed the project before it experienced weather delays. The Claims Court concluded that, because the contract was extended by bilateral modifications, it was impossible for Wilner to prove that he would have completed the project before weather interfered. *Id.* at 276–77. The issue has not been raised on appeal.

inadequate to establish the critical path of the project, so as to enable Wilner to prove that government-caused delay had delayed the overall completion of the project.[5] Nevertheless, the court examined the evidence presented at trial to determine whether there was a basis, despite the absence of a critical path analysis, for determining that any of these activities was on the critical path of the project. The court sua sponte admitted into evidence the written decision of the contracting officer and also heard the testimony of the contracting officer, who was called as a witness by the government.

Eventually, following a careful and thorough review of the evidence presented at trial, the Claims Court found that the only critical path delay attributable to the government resulted from the duct revision work and that that delay extended the project from February 27, 1987, to May 29, 1987, a total of 91 calendar days. *Id.* at 275. Having so concluded, the court stated: "The problem that the court perceives is that its determinations thus far reflect the government-caused delays *as proved by plaintiff at trial,* rather than what the court perceives, *but plaintiff failed to prove,* to be the actual government-caused delays." *Id.* at 277 (emphasis added). The court also stated that, "[d]ue to the absence of a critical path analysis," and without considering the contracting officer's final decision, it was "unable to determine whether delays caused by the Navy were properly compensable as critical path delays." *Id.* at 279. Thus, the court made it clear that Wilner had failed to prove his case.

The Claims Court, however, did not enter judgment based upon its finding of 91 calendar days of government-caused delay. Rather, relying upon *J.D. Hedin Construction Co. v. United States,* 347 F.2d 235, 171 Ct.Cl. 70 (1965), for the proposition that "the findings of a contracting officer are entitled to a strong presumption of validity, subject to rebuttal," *Wilner,* 26 Cl.Ct. at 277, the court described the contracting officer's decision as "evidence before the court that must be considered and weighed." *Id.* at 279. After summarizing Mr. Lindstrom's testimony explaining how he had reached his decision, the Claims Court stated: "Plaintiff's failure to present a critical path analysis at trial is an insufficient basis to reject the contracting officer's determinations of critical path delay days based on the technical analysis [presented to the contracting officer]." *Id.*

After considering Mr. Lindstrom's final decision, the Claims Court modified his calculations to increase the delay compensation awarded to Wilner by $26,271.49 plus interest, based upon 259 calendar days of government-caused critical path delay (instead of the 260 days of critical path delay found by the contracting officer). *Id.* at 280–81. The court also rejected the government's claim for repayment of $133,094.79 in delay compensation already paid to Wilner for lack of jurisdiction. *Id.* at 279.[6]

---

**5.** A "critical path" is a way of grouping interrelated activities in a construction project. A delay to an activity that is on the "critical path" usually results in a corresponding delay to the completion of the project. "The reason that the determination of the critical path is crucial to the calculation of delay damages is that only construction work on the critical path had an impact upon the time in which the project was completed." *G.M. Shupe, Inc. v. United States,* 5 Cl.Ct. 662, 728 (1984), *cited with approval in Kelso v. Kirk Bros. Mechanical Contractors, Inc.,* 16 F.3d 1173, 1177 (Fed.Cir.1994).

Regarding the duct revision work, the Claims Court stated: "Without a critical path analysis, the court cannot exclude the possibility that the contractor caused concurrent delay on the project." *Wilner,* 26 Cl.Ct. at 274. As for the OWJ revision work, the court stated: "The absence of a critical path analysis prevents the court from discerning whether the OWJ design defect may have been discovered earlier, but for a delay of the contractor.... The evidence relating to the OWJ revision work is insufficient for this court to attribute critical path delay to the Navy." *Id.* at 275–76. Finally, regarding the smoke detector work, the court stated: "The absence of a critical path analysis for the project prevents the court from determining that critical path delay, attributable to the Navy, occurred with respect to the smoke detector work." *Id.* at 276.

**6.** The contracting officer did not issue a final decision demanding that Wilner return the $133,094.79 credited to him. Accordingly, the Claims Court ruled that, as far as the proceedings before it were concerned, the government was limited to seeking return of the net award of $17,259.46 which the contracting officer had made to Wilner. 26 Cl.Ct. at 279. Having made an award to Wilner based upon its finding of 259 days of government-caused delay, the court denied the government's claim for return of the $17,259.46.

## DISCUSSION

### I

The government contends that the Claims Court erred as a matter of law by failing to conduct a proper de novo review pursuant to the CDA. Specifically, the government argues that, in ruling for Wilner, the Claims Court "deferred completely to the contracting officer's decision" and therefore made improper use of the decision under the CDA. The government does not challenge the finding of the Claims Court that the evidence at trial established that the Navy was responsible for 91 calendar days of critical path delay. Neither does the government challenge the Claims Court's dismissal of its claim for repayment of the $133,094.79 credit. The government does, however, seek repayment of the $17,259.46 net award to Wilner. Wilner, on the other hand, contends that the Claims Court conducted a proper de novo review and that its decision was based upon evidence admitted at trial, which included both the contracting officer's testimony and his final decision.

In view of the contentions of the parties, resolution of this appeal requires a two-step process. First, we must determine the method by which the Claims Court decided the case. Then, we must determine whether, as a matter of law, that method of decision was proper under the CDA. It is to the former question that we turn first.

### II

■ We disagree with Wilner's contention that the contracting officer's testimony at trial provides support for the Claims Court's decision and that the Claims Court relied upon both the contracting officer's testimony and final decision. We have carefully reviewed both the contracting officer's testimony and the decision of the Claims Court. As far as the contracting officer's testimony is concerned, the contracting officer did not provide testimony which independently established 259 calendar days of government-caused delay. Mr. Lindstrom testified that, in making his decision, he attempted to weigh equally the interests of the Navy and the contractor, and he noted that it was the practice of his office to ascertain that a compensable delay had occurred before granting delay compensation. Mr. Lindstrom stated that his final decision was based upon the results of a technical review performed by the Navy's Engineering Construction Division and upon the opinions of a Navy technical analyst, a consultant, and counsel, who conducted a legal review of the technical analysis. However, Mr. Lindstrom did not conduct an independent analysis of Wilner's delay claim. In addition, he had no first-hand knowledge of the events that transpired during performance of the contract and no specific recollection of the documents he reviewed in making his final decision. Significantly, at no point in his testimony did Mr. Lindstrom state why he believed that the delays which Wilner experienced fell on the critical path of the project so that they delayed the overall completion of the project. Moreover, counsel for Wilner asked no questions designed to elicit such information. Thus, this is not a case in which the contracting officer testified to any facts underlying the claim. Mr. Lindstrom merely explained the process he followed in making the award. In short, Mr. Lindstrom explained what he relied upon for the conclusions in his final decision. His testimony, however, added nothing to, and provided no support for, those conclusions.

Turning to the decision of the Claims Court, in awarding Wilner $26,271.49 in additional compensation, the court did not rely upon testimony of Mr. Lindstrom independently establishing 259 days of government-caused delay. Had there been testimony of Mr. Lindstrom upon which the court could, and did, rely, it would not have been necessary for the court to state that, "[d]ue to the absence of a critical path analysis," and without considering the contracting officer's final decision, it was "unable to determine whether delays caused by the Navy were properly compensable as critical path delays." *Wilner*, 26 Cl.Ct. at 279. Furthermore, examination of the pertinent portion of the Claims Court's decision—which appears under the heading "Contracting officer's final decision"—*id.*, reflects nothing more than what we have noted above: namely, that Mr. Lind-

strom testified as to the process through which he arrived at his decision, not as to supporting facts. In short, the Claims Court's award to Wilner was not based upon evidence at trial supporting Wilner's claim. Rather, it was based solely upon the *fact* that the contracting officer had made an award to Wilner.

We thus conclude that Mr. Lindstrom's testimony provided no support for the Claims Court's award to Wilner. We also conclude that the Claims Court made its award to Wilner based solely upon the fact that, in his final decision, Mr. Lindstrom determined that the government was responsible for 260 calendar days of delay to the project. We now address the question of whether the court's approach was correct.

## III

The CDA provides that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). As far as the contracting officer's decision is concerned, the CDA states that "[s]pecific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding." *Id.* The CDA further provides that, after a contracting officer renders a decision upon a claim, a contractor may bring an action directly on the claim in the Court of Federal Claims. 41 U.S.C. § 609(a)(1). In the Court of Federal Claims, the action proceeds "de novo in accordance with the rules of the ... court." 41 U.S.C. § 609(a)(3).

In *Assurance Co. v. United States,* 813 F.2d 1202 (Fed.Cir.1987), this court addressed the question of the status of a contracting officer's decision under the CDA. The issue in *Assurance* was whether the Armed Services Board of Contract Appeals (Board) could legally reduce a contracting officer's award to a contractor when the contractor, dissatisfied with the award, brought an action before the Board. We concluded that, under the CDA, the Board did have the power to reduce the contracting officer's award. In reaching that conclusion, we looked to the provisions of the CDA cited above which state (i) that findings of fact by

a contracting officer are not binding in any subsequent court proceeding, 41 U.S.C. § 605(a); and (ii) that in a court action following a contracting officer's decision, the suit is to proceed de novo, 41 U.S.C. § 609(a)(3). In addressing the de novo nature of the proceedings under the CDA, we stated:

> [T]he Disputes Act itself suggests that, where an appeal is taken to a board or court, the contracting officer's award is not to be treated as if it were the unappealed determination of a lower tribunal which is owed special deference or acceptance on appeal.

*Assurance,* 813 F.2d at 1206.

■ The plain language of the CDA and our decision in *Assurance* make it clear that when suit is brought following a contracting officer's decision, the findings of fact in that decision are not binding upon the parties and are not entitled to any deference. The contractor has the burden of proving the fundamental facts of liability and damages de novo. *See Servidone Constr. Corp. v. United States,* 931 F.2d 860, 861 (Fed.Cir.1991) ("To receive an equitable adjustment from the Government, a contractor must show three necessary elements—liability, causation, and resultant injury."). *See also William F. Klingensmith, Inc. v. United States,* 731 F.2d 805, 809 (Fed.Cir.1984); *Blinderman Constr. Co. v. United States,* 695 F.2d 552, 559 (Fed.Cir. 1982). This means that when the claim being asserted by the contractor is based upon alleged government-caused delay, the contractor has the burden of proving the extent of the delay, that the delay was proximately caused by government action, and that the delay harmed the contractor.

■ The plain language of the CDA and our decision in *Assurance* also make it clear that, in court litigation, a contractor is not entitled to the benefit of any presumption arising from the contracting officer's decision. De novo review precludes reliance upon the presumed correctness of the decision. *See Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 23, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974) (de novo proceeding is "unfettered by any prejudice from

the agency proceeding and free from any claim that the [prior] determination is supported by substantial evidence"). Thus, once an action is brought following a contracting officer's decision, the parties start in court or before the board with a clean slate. In this case, after stating that Wilner had failed to carry his burden of proof with respect to alleged government-caused delay, *Wilner*, 26 Cl.Ct. at 277, the Claims Court stated that Wilner's failure to present a critical path analysis was "an insufficient basis to reject the contracting officer's determinations of critical path delay days based on the technical analysis." *Id.* at 279. As discussed above, the court then relied simply upon the *fact* of Mr. Lindstrom's decision in making its award to Wilner. Thus, contrary to the mandate of the CDA that a contracting officer's findings of fact are not "binding in any subsequent proceeding," 41 U.S.C. § 605(a), and contrary to the conclusion in *Assurance* that a contracting officer's award is owed neither "special deference [nor] acceptance," the Claims Court used Mr. Lindstrom's final decision to trump the evidence at trial, thereby allowing Wilner to escape the consequences of his failure to meet his burden of proof.[7] We hold that the Claims Court's approach constituted legal error because it was contrary to the concept of proceeding de novo, which is mandated by the CDA.

### IV

As noted above, in its decision, the Claims Court relied upon *J.D. Hedin Construction Co. v. United States*, 347 F.2d 235, 171 Ct.Cl. 70 (1965). In *Hedin*, one of our predecessor courts, the United States Court of Claims, determined the extent of government-caused delays arising from a contract for the construction of hospital facilities. In so doing, the court noted that the "grant of an extension of time by the contracting officer carries with it the administrative determination (admission) that the delays resulted through no fault of the contractor." *Id.* 347 F.2d at 245. The court further stated that "the findings of the contracting officer have been said to constitute a strong presumption ... or an evidentiary admission ... of the extent of the Government's liability, but always subject to rebuttal." *Id.* (citations omitted).

The Claims Court's reliance on *Hedin* was misplaced. *Hedin* predates the effective date of the CDA by more than ten years, and "[w]ith the passage of the [CDA], a new era in the resolution of Government contracts emerged." *Tuttle/White Constructors, Inc. v. United States*, 228 Ct.Cl. 354, 656 F.2d 644, 646 (1981). The plain language of the CDA provides that "[s]pecific findings of fact [by the contracting officer] ... shall not be binding in any subsequent proceeding," 41 U.S.C. § 605(a), and that an action in court on a claim "shall proceed de novo...." 41 U.S.C. § 609(a)(3).[8] Contrary to the plain language of the CDA, however, *Hedin* makes a contracting officer's findings binding upon the government as strong presumptions or evidentiary admissions in a subsequent proceeding unless they are rebutted. Also, a court proceeding on a claim cannot fairly be termed "de novo" if the government is said to enter the proceeding with the contracting officer's decision on the claim constituting a strong presumption or evidentiary admission, subject to rebuttal, of the extent of the government's liability. Accordingly, we today

---

7. The Claims Court distinguished *Assurance* on the ground that, unlike *Assurance*, facts "justifying rejection of the contracting officer's determination of critical path delay days and additional work days ... are not present in this case." *Wilner*, 26 Cl.Ct. at 280. The Claims Court continued, "Contracting officer Lindstrom did not disavow or undermine his decision except as to minor adjustments." *Id.* However, under the CDA's de novo standard of review, the government was not required to disavow the findings in Mr. Lindstrom's decision. Once Wilner brought suit in the Claims Court, as a matter of law, Mr. Lindstrom's findings were of no force or effect. Under 41 U.S.C. § 605(a), "[s]pecific findings of fact [by the contracting officer] ... shall not be binding in any subsequent proceeding."

8. Moreover, as noted in *Assurance*, Court of Claims precedent after *Hedin* held that, in the event of an appeal to a board of contract appeals under the disputes clause of a government contract, the contracting officer's decision was deemed "vacated" and enjoyed "no presumptive validity whatever." *Southwest Welding & Mfg. Co. v. United States*, 413 F.2d 1167, 1184–85 (Ct.Cl.1969). "There is no reason to believe that, in enacting the Contract Disputes Act, Congress intended to change this established rule." *Assurance*, 813 F.2d at 1206.

expressly overrule *Hedin* to the extent that it stands for the proposition that a contracting officer's decision constitutes a strong presumption or an evidentiary admission of the extent of the government's liability, albeit subject to rebuttal.[9]

## V

■ One final point should be noted. Nothing we say today should be viewed as suggesting that a contracting officer is not competent to offer testimony in a board of contract appeals hearing or in a trial in the Court of Federal Claims. Subject to the Federal Rules of Evidence, in any given case contracting officer testimony certainly is admissible. Neither should anything we say today be viewed as suggesting that a contracting officer's final decision has no place in a board of contract appeals proceeding or in litigation in the Court of Federal Claims. Such a decision—or at least the submission of a claim requesting such a decision—is of course necessary to establish jurisdiction in the board or the court, to give one example that comes to mind. *See* 41 U.S.C. § 605(a), (c). The critical point is that, in this case, the Claims Court erred as a matter of law by using Mr. Lindstrom's final decision in a way that was inconsistent with the CDA's requirement of de novo review of Wilner's claim.

## CONCLUSION

The judgment of the Claims Court in favor of Wilner is vacated, and the case is remanded for further proceedings. The government has asked us to direct the entry of judgment in its favor in the amount of $17,259.46. On the record before us, however, we are unable to say whether it is entitled to such a result. On remand, therefore, the Court of Federal Claims is directed to determine whether either Wilner or the government is entitled to an award in view of the finding—based upon the evidence at trial—that the Navy was responsible for 91 days of critical path delay with respect to the duct revision work. The court should then enter judgment accordingly.

## COSTS

Each party shall bear its own costs.

VACATED and REMANDED WITH INSTRUCTIONS.

BENNETT, Senior Circuit Judge, dissenting, with whom NEWMAN, Circuit Judge, joins.

Today the court has taken a significant step, overruling fifty years of precedent, abolishing the rule on evidentiary admissions seriously unquestioned until now, and agreeing with the government's position against contractors doing business with the government. The majority's stated reason for this position is that it is mandated by the Contract Disputes Act (CDA) of 1978, 41 U.S.C. §§ 605(a), 609(a)(3) (1988), which requires any appeal to the United States Court of Federal Claims (Claims Court)[1] to proceed *de novo* without binding reference to evidence produced before the agency board or a decision by the contracting officer favoring the contractor. In other words, a new start is required on a claim, writing on a "clean slate" by relitigation. The court requires relitigation of every fact, including facts not disputed by the agency and previously conceded. This is indicated to be a "new era," since 1978. The CDA did not, however, change the law to place additional, if not impossible, burdens on contractors in resolving disputes with agencies.

9. Our respected dissenting colleague states that "neither the CDA's '*de novo*' provision nor its requirement that the contracting officer's fact findings be nonbinding constituted a change in the law with respect to *J.D. Hedin.*" This statement brings into sharp focus the fundamental point of difference between the majority and the dissent. Our holding today is based upon the conclusion that the CDA did, in fact, constitute such a change in the law with respect to *Hedin.* In view of this fundamental point of difference, we do not believe that any useful purpose would be served by debating the subsidiary points raised in the dissent.

1. The Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516, changed the name of the United States Claims Court to the United States Court of Federal Claims. However, reference shall be made to the Claims Court since that was its designation at the time this action was commenced.

The trial court gave evidentiary weight to the testimony and decision of the contracting officer. The majority holds that this was error, and that the case must be decided in the absence of this evidence: that is, that it can be given no weight whatsoever. The majority's predicate for this, stated above, is clearly mistaken and ignores the purpose of the CDA, its legislative history, and judicial precedents, as will be shown in this dissent. A small award is at issue here but the consequences of the court's opinion and judgment are of enormous importance. The majority view has been ably presented by government counsel on appeal before this court. Mr. Wilner, not a lawyer, appeared *pro se.*

## I

There is nothing in the CDA which prohibits the use of the contracting officer's findings and conclusions as evidence in a subsequent *de novo* proceeding. *See Lathan Co. v. United States,* 20 Cl.Ct. 122, 125 (1990) ("This court may weigh the [contracting officer's] findings and conclusions as it would any other evidence.") (Rader, J.). The mere fact that the contracting officer's decision is nonbinding on appeal to the Claims Court does not mean that it has no evidentiary value. The Supreme Court has held that nonbinding agency findings can be considered as evidence of the ultimate matters at issue in subsequent *de novo* proceedings. *See Universal Camera Corp. v. National Labor Relations Bd.,* 340 U.S. 474, 493–94, 71 S.Ct. 456, 467–68, 95 L.Ed. 456 (1951) (holding that the nonbinding findings of an NLRB "trial examiner" may be considered in a subsequent appeal to establish whether an employee's removal was supported by substantial evidence).

The contracting officer, administering the contract for the government, has direct and intimate knowledge of the relevant facts.

The contracting officer's decision necessarily entails many factual findings. It is unlike a "judgment." When a judgment is vacated, it is "canceled," "rendered void," or "set aside." Black's Law Dictionary 1548 (6th ed. 1990). In other words, it no longer has force. However, setting aside the contracting officer's decision does not also erase the evidentiary value of the findings and other information relevant to a dispute. When factual findings are not contradicted on the appeal they can be given probative weight without requiring the contractor to reprove the facts. The majority now rejects this possibility, holding that the CDA requires full relitigation in a trial *de novo.* The court's new literal interpretation of *de novo* goes too far because it would require the Court of Federal Claims to discard all contracting officer findings, and require the litigants to reproduce all the raw data, and the court to reconduct any essential analyses or investigations which may have already been performed by or for the contracting officer. The court so requires, whether or not the contracting officer's findings are placed in dispute by the government. Not only is this interpretation of "vacated" in conflict with 48 C.F.R. § 33.212 (1993) of the FAR, but its effect runs counter to this court's decisions that have rejected litigating positions which waste resources and time or needlessly encumber the dispute resolution process. *See Andersen Consulting v. United States,* 959 F.2d 929, 932 (Fed. Cir.1992). Indeed, this court has now overruled longstanding precedent, to the direct detriment of those who do business with the government.

Since enactment of the CDA in 1978, this court, as well as the agency boards and the Claims Court, have all made use of the contracting officer's findings and/or testimony as evidence of the ultimate matters at issue in a subsequent *de novo* hearing.[2] Such evidence

**2.** *See Edward R. Marden Corp. v. United States,* 803 F.2d 701, 704 (Fed.Cir.1986) (the contracting officer's opinion testimony before agency board cited by court as evidence tending to prove reasonableness of appellant's contract interpretation); *Harvey C. Jones, Inc.,* ICBA Nos. 2070, 2150, 2151, 2152, 2153, 2467, 90–2 BCA (CCH) ¶ 22,762, at 114,231, 114,234 (the contracting officer's opinion testimony considered as evi-

dence of delay causation and strength of appellant's claims); *Charles G. Williams Constr., Inc.,* ASBCA No. 33766, 89–2 BCA (CCH) ¶ 21,733, at 109,247, 109,251 (the contracting officer's opinion testimony considered as evidence of delay causation); *Timberland Paving & Constr. Co. v. United States,* 18 Cl.Ct. 129, 141 (1989) (the contracting officer's opinion testimony considered as evidence tending to prove reasonableness

has been presented sometimes by the government and sometimes by the contractor. In *Assurance Co. v. United States*, 813 F.2d 1202, 1206 (Fed.Cir.1987), cited favorably here several times in the majority opinion, the government called the contracting officer as a witness before the board of contract appeals and asked him about the basis of his decision. The contracting officer's testimony cast doubt upon his own prior decision. Specifically, the contracting officer testified that he had made factual errors in arriving at his decision and "overstated" his award. *Id.* at 1206. The contracting officer's testimony regarding his decision was accepted as admissible evidence, *id.* at 1205, and indeed such evidence has been admitted for half a century. Based in part upon that testimony, the board rejected one of the contracting officer's damage awards and reduced the amount of the other. *Id.* On appeal, the Federal Circuit affirmed the board's decision and noted that the board on appeal of the contracting officer's decision could, like the Court of Claims, decrease or increase the contracting officer's award. *Id.* at 1206.

This court in *Assurance* did not depart from the practice whereby a contracting officer's findings can serve as evidence of the ultimate matters at issue. In the case at bar it was the government that called the contracting officer as a witness and attempted to discredit his decision. What difference would it have made in *Assurance* whether the contracting officer's findings were sound or full of errors if they had no evidentiary value of the ultimate matters at issue? (Except, perhaps, to prove fraud.) Put another way, if the contracting officer's findings, particularly undisputed findings, cannot be used as evidence of the ultimate matters at issue, then any testimony by the contracting officer either supporting or disowning that decision would be meaningless. However, in *Assurance* both the board and this court used such testimony as evidence to justify a reduction in the contractor's award.

It appears as if the government and the majority are attempting to have it both ways. The government sought Contracting Officer Lindstrom's testimony before the Claims Court as evidence in an attempt to discredit his finding of 260 days of government-caused delay, but now seeks to bar the use of that finding as evidence in support of the court's decision. If, as in *Assurance*, the contracting officer's testimony can be used as evidence to reduce an award, it should also be available as evidence to sustain an award.

To summarize, the CDA does not preclude the use of the contracting officer's findings, decision, and testimony as evidence of the ultimate matters at issue in a subsequent *de novo* proceeding. Such evidence has often and routinely been presented, and has facilitated the dispute resolution. In fact, the FAR requires the contracting officer to provide the reviewing tribunal with "information and support." To disregard the contracting officer's evidence would be absurd, not to mention a tremendous waste of government and contractor litigation effort, because the contracting officer has the complete picture of the agency's side of the dispute. Also, the contracting officer can sometimes be looked upon as an expert witness who is free to testify as to the ultimate matters at issue. Finally, as shown above, the Federal Circuit, Claims Court, agency boards, and the Court of Claims have all permitted evidentiary use of the contracting officer's nonbinding findings and conclusions in a *de novo* proceeding.

Accordingly, the Claims Court did not depart from law or precedent in considering Contracting Officer Lindstrom's findings and testimony as evidence to establish delay causation. The majority argues that the trial court simply adopted the contracting officer's decision. This is incorrect. The trial court used the contracting officer's findings of the

---

of final decision); *Morrison Assurance Co. v. United States*, 3 Cl.Ct. 626, 633 (1983) (the contracting officer's opinion testimony considered as evidence of proper contract interpretation); *Salem Eng'g & Constr. Corp. v. United States*, 2 Cl.Ct. 803, 806 (1983) (the contracting officer's opinion testimony considered as evidence tending to prove contract ambiguity). Also, prior to

enactment of the CDA, the Court of Claims also used the CO's opinion testimony as evidence probative of the ultimate matters at issue in a subsequent *de novo* proceeding. *Hallman v. United States*, 80 F.Supp. 370, 373 (Ct.Cl.1948) (contracting officer's interpretation of facts considered by court but found unpersuasive in light of other evidence).

factual question of delay causation, which findings were not disputed or impeached by any evidence offered to the trial court in making its own finding of the total number of days of government-caused delay. The government offered *no* contrary evidence. I am at a loss to understand the majority's requirement that despite this undisputed governmental admission, the contractor must now introduce the raw data on which the contracting officer relied. Delay causation is a question of fact, not law, and the raw data on which the agency relied in finding 260 days of delay are not challenged.

## II

The Claims Court determined that the evidence presented by the contractor at the trial, *taken alone,* entitled Wilner to only ninety-one days of compensatory delay. Accordingly, the court then considered the contracting officer's trial testimony to determine what weight, if any, it should be given as evidence of government-caused periods of delay. 26 Cl.Ct. at 279. The court, in its role as fact finder, gave the contracting officer's testimony weight, not deference.

The majority of this court concludes that the Claims Court simply deferred to the contracting officer's decision rather than giving it evidentiary weight. The majority notes that Contracting Officer Lindstrom testified that in making his finding of 260 days of government-caused delay he relied primarily on a technical review performed by the Engineering Construction Division, and that he also relied on his technical consultants and their preparation of critical path data. The contracting officer also testified that he had no specific recollection, at the time of the trial, of the documents he reviewed several years earlier. However, these considerations go toward the weight that the contracting officer's testimony should be given rather than to whether the trial court conducted a proper *de novo* review as required under 41 U.S.C. § 609(a)(3). Reliance on technical reports prepared by specialists, and the expert advice of technical consultants, is not unusual in government. In fact, contracting officers are required to use all available information. *See* 48 C.F.R.

§ 1.602–2(c) (1992); FAR § 33.212 (1992). The contracting officer is the government official responsible for obtaining and considering full information, then making a decision on behalf of the agency. The contracting officer is acting on behalf of the agency, and the availability of the contracting officer as a witness has not been challenged. The government's position, accepted by the majority of this court, is simply that any findings of the contracting officer that favor the contractor—even when factually undisputed—cannot be used as evidence, but must be reproved on the raw data.

Precedent is to the contrary. In accordance with precedent, the Claims Court's use of the contracting officer's final decision in the case at bar was proper. This court's requirement that a contractor such as Wilner must adduce the raw data at trial, through those who collected it and those who analyzed it and presented it to the contracting officer, places a heavy and unnecessary burden on contractor and government, and will price litigation with the government out of reach, to the disservice of those who are willing to serve the government.

## III

Contracting Officer Lindstrom's finding that the government was responsible for 260 days of delay constitutes "a strong presumption or an evidentiary admission of the extent of the Government's liability, but always subject to rebuttal." This principle is old and well established. *J.D. Hedin Constr. Co. v. United States,* 347 F.2d 235, 245, 171 Ct.Cl. 70 (1965). *See also Dean Constr. Co. v. United States,* 411 F.2d 1238, 1245, 188 Ct. Cl. 62 (1969); *Robert E. Lee & Co. v. United States,* 164 Ct.Cl. 365, 370, 1964 WL 8584 (1964); *Vulcan Rail & Constr. Co. v. United States,* 158 Ct.Cl. 234, 241, 1962 WL 9257 (1962); *George A. Fuller Co. v. United States,* 69 F.Supp. 409, 411, 108 Ct.Cl. 70 (1947); *Irwin & Leighton v. United States,* 101 Ct.Cl. 455, 475, 1944 WL 3721 (1944).

Although Contracting Officer Lindstrom's findings were adverse to the government's position at trial that Wilner was entitled to no compensation, the government neither contested the sufficiency of those findings

nor challenged the technical reports upon which they were based. Thus, the contracting officer's findings constitute an unrebutted presumption or admission of the extent of the government's liability. However, the government argues that the *J.D. Hedin* holding[3] and its supporting and ensuing case law are no longer valid in view of changes in the procurement law brought on by the CDA. The majority accepts this view and today expressly overrules *J.D. Hedin*[4] and, thus by implication, the authorities which preceded and followed *Hedin* in support of it.

A. The Contract Disputes Act (CDA) did not constitute a change in the statutes with respect to the *J.D. Hedin* line of cases and is not a valid excuse to overrule them.

Prior to the CDA, a contracting officer's decision was often reviewed by the appropriate agency board as per the standard disputes clause inserted into most government contracts. Dissatisfied parties could appeal an agency board decision to the United States Court of Claims. 28 U.S.C. § 1491 (1976). Before 1950, the Court of Claims would then conduct a *de novo* review of the dispute.[5] The agency's conclusions were given no deference, and its findings were not binding. The Court of Claims was free to make its own decision based on evidence adduced in court. *See* Sidney B. Jacoby, *The Contract Disputes Act of 1978: An Important Development*, 39 Fed.B.J. 10, 13 (Summer 1980). This is the same standard as that currently in place under sections 605 and 609 of the CDA, although there were digressions along the way as next shown.

In 1950 the Supreme Court held that, absent fraud in the administrative decision, the Court of Claims could not conduct a *de novo*

evidentiary hearing and was bound to the fact findings of the agency board. *United States v. Moorman*, 338 U.S. 457, 461, 70 S.Ct. 288, 290, 94 L.Ed. 256 (1950). Later, in *United States v. Martin Wunderlich Co.*, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951), the Supreme Court affirmed its earlier ruling in *Moorman* and explained that a mere gross mistake could not be fraud and that by "fraud we mean conscious wrongdoing, an intention to cheat or be dishonest." *Id.* at 100, 72 S.Ct. at 155.

These two cases met with an unfavorable response in the public contracting community and resulted in the Wunderlich Act of May 11, 1954.[6] 41 U.S.C. §§ 321, 322 (1970). Under the Wunderlich Act, the agency board's decision was final on fact questions arising under the contract except when determined by a competent court to have been "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." 41 U.S.C. § 321 (1970). The Court of Claims interpreted the Wunderlich Act as restoring the situation to the way it was prior to the *Wunderlich* decision. *See, e.g., Volentine & Littleton v. United States*, 145 F.Supp. 952, 953, 136 Ct.Cl. 638 (1956). The Supreme Court agreed. *S & E Contractors, Inc. v. United States*, 406 U.S. 1, 13–14, 92 S.Ct. 1411, 1418–19, 31 L.Ed.2d 658 (1972) ("That Act was designed to overturn our decision in *United States v. Wunderlich*, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951), which had closed the courthouse doors to certain citizens aggrieved by administrative action amounting to something less than fraud."), citing House and Senate Reports on the Act. Accordingly, the Court of Claims again began granting *de novo* hearings and deciding

---

**3.** Although *J.D. Hedin* addressed many issues, reference to its holding is directed only toward that portion of the decision stating that the findings of the contracting officer constitute a strong presumption or an evidentiary admission of the extent of the government's liability, but always subject to rebuttal.

**4.** Federal Circuit precedent is overturned either through a change in the statute or through an *in banc* proceeding or decision of the Supreme Court.

**5.** At that time, the Court of Claims was composed of a trial part, which evolved in 1982 into the Claims Court (now renamed the Court of Federal Claims), and an appellate part which was incorporated into the Federal Circuit in 1982.

**6.** *See* Franklin M. Schultz, *Proposed Changes in Government Contract Disputes Settlement: The Legislative Battle Over the Wunderlich Case*, 67 Harv.L.Rev. 217 (1953); Marion E. Harrison, *Eight Years After Wunderlich—Confusion in the Courts*, 28 Geo.Wash.L.Rev. 561, 563 (1960).

cases based upon its independent interpretation of the evidence produced at trial.

However, in *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), the Supreme Court again reversed the Court of Claims and held that even under the Wunderlich Act, absent fraud, the Court of Claims was bound by the findings of fact made by an agency board on issues subject to the contract's disputes clause. *Id.* at 714, 83 S.Ct. at 1413. This holding required the Court of Claims to remand cases back to the agency board whenever additional findings of fact became necessary.

The Court of Claims addressed the issue of *de novo* review again in two other cases: *Anthony Grace & Sons v. United States,* 345 F.2d 808, 170 Ct.Cl. 688 (1965), and *Utah Constr. & Mining Co. v. United States,* 339 F.2d 606, 168 Ct.Cl. 522 (1964). The court held that under the Wunderlich Act, the findings of the contracting officer or agency board were not binding if the dispute alleged claims, such as breach of contract, which did not arise under the contract's disputes clause. *Id.* 339 F.2d at 609. It was at about this time that the *J.D. Hedin* case was heard in the Court of Claims.

In *J.D. Hedin* the contractor alleged that the government had changed the contract specifications and breached the contract by delaying the project's completion. The trial commissioner conducted a *de novo* hearing and made findings and conclusions based on evidence produced at trial.[7] On review the Court of Claims ruled, *in banc,*[8] that the *de novo* hearing was proper because the government had waived any right it may have had to protest a *de novo* hearing per the Supreme Court's holding in *Bianchi* by failing to make a timely objection.

Meanwhile, the Supreme Court granted certiorari in both *Anthony Grace* and *Utah. See United States v. Anthony Grace & Sons,* 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966); *United States v. Utah Constr. &*

*Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). In *Anthony Grace,* the Court held that in most cases the Court of Claims could not conduct *de novo* hearings under the Wunderlich Act and remanded an improperly dismissed dispute back to the agency board rather than to the Court of Claims for further findings. Similarly, in *Utah* the Court held that the Court of Claims may not conduct a *de novo* hearing except in cases involving breach claims where relief is not available under the contract.

The decisions again caused concern in the contracting community. During hearings on the proposed CDA legislation, Congress considered whether the law should be returned to the way it was prior to *Moorman* and *Wunderlich,* so that the Court of Claims could again conduct *de novo* hearings in all cases. *See* H.R.Rep. No. 1556, 95th Cong., 2d Sess. 73–81 (1978) (statement of Acting Chief Judge Davis for the Court of Claims). As a result, *Bianchi, Grace,* and *Utah* were overruled by Congress when the *de novo* provision of section 609(a)(3) and the nonbinding provision of section 605 were incorporated into the CDA. The Court of Claims would thereafter conduct *de novo* hearings in all cases since "the [Supreme Court's] ruling of *United States v. Anthony Grace & Sons* was reversed by the Act." Jacoby, *supra* at 17.

To summarize, neither the CDA's *"de novo"* provision nor its requirement that the contracting officer's fact findings be nonbinding constituted a change in the law with respect to *J.D. Hedin. J.D. Hedin* was decided *de novo,* and the trial commissioner was not bound to any prior findings. The government acknowledges this in its brief. To argue that the CDA changed the law, thereby making prior Court of Claims precedent ineffective, is simply not correct. As commentators and precedent have recognized, the line of cases cited in part III of this opinion going as far back as 1944, as well as *J.D. Hedin,* were reaffirmed, not over-

---

7. I was the trial commissioner for the *J.D. Hedin* case.

8. All disputes were heard *in banc* by the appellate part of the Court of Claims until Chief Judge Wilson Cowen issued a General Order on May

15, 1973, allowing the Court of Claims to sit in panels of three "as to all matters submitted and/or argued after June 30, 1973." This order was pursuant to statute. 201 Ct.Cl. xvii.

ruled, in the Contract Disputes Act, and have provided solid reasoning relied on in ensuing opinions of the Court of Claims and its successor claims courts.

Nevertheless, the government argues and the majority agrees that the CDA's *de novo* review requirement constituted a change in the law which effectively overruled *J.D. Hedin,* itself a case of *de novo* review. "It can be presumed that Congress is knowledgeable about existing law pertinent to legislation it enacts." *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1581 (Fed.Cir. 1990) (citing *Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 184–85, 108 S.Ct. 1704, 1711–12, 100 L.Ed.2d 158 (1988)), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991). The CDA did not purport to overrule *Hedin;* although the record makes clear its intent to overrule *Bianchi, Grace,* and *Utah.* "A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change." *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 521, 109 S.Ct. 1981, 1991, 104 L.Ed.2d 557 (1989).

The legislative history indicates that the purpose behind the CDA's *de novo* review requirement was to return the law to the way it was prior to the Supreme Court's decision in *Wunderlich* so that contractors could have the option of bringing claims directly to the Court of Claims without restriction to any agency board's prior findings of fact. *See* S.Rep. No. 1118, 95th Cong., 2d Sess. 29 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5263 ("*Section 10(a)* allows contractors, at their option, to bypass administrative disputes-resolving forums and seek review of adverse contracting officer decisions directly in the Court of Claims."). Reading more into the purpose of the CDA's *de novo* review provision (for example, implying that the *J.D. Hedin* holding was effectively overruled) would be contrary to and unsupported by the legislative history.

The legislative history of the CDA does not mention *J.D. Hedin.* This is in direct contrast to *United States v. Anthony Grace & Sons,* 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966), *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 86 S.Ct.

1545, 16 L.Ed.2d 642 (1966), and *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), which were discussed and criticized in the CDA's legislative history. *See, e.g.,* H.R.Rep. No. 1556, *supra* at 73–81. In addition, these cases, unlike *J.D. Hedin,* have been recognized as overruled. *See* Jacoby, *supra* at 16–17. *J.D. Hedin,* however, is in full accord with the CDA.

Moreover, in 1969, Congress created the Commission on Government Procurement "to study the procurement process and make recommendations to improve its efficiency." S.Rep. No. 1118, *supra* at 4, *reprinted in* 1978 U.S.C.C.A.N. at 5238. That commission conducted a three-year, $7–million investigation and in 1972 issued a comprehensive report in six large volumes. *Id.* A significant part of the commission's report dealt with "Disputes Arising in Connection with Contract Performance." In addition to this report, Congress also received the views of lawyers, numerous bar association groups, the Department of Justice, and other administrative departments on the problems present in the area of government contract disputes. Neither the commission report nor any testimony ever asserted that *J.D. Hedin* or the cases that held similarly should be overruled by the new legislation. Thus, *J.D. Hedin* could not have been overruled by the CDA because Congress did not "speak directly" to the issue, even as it overruled other cases. *United States v. Texas,* — U.S. —, —, 113 S.Ct. 1631, 1634, 123 L.Ed.2d 245 (1993).

The majority opinion contends that *J.D. Hedin* was effectively overruled by the CDA because under a *de novo* standard of review, it is inappropriate to afford weight to the administrative decision being reviewed. The authority cited by the majority and the government in support of this view is *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 23, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974). Their position is incorrect.

First, the contracting officer's decision is no more final today than it was prior to the CDA. Before passage of the CDA, contracting officers made nonbinding findings in breach claims, *Langevin v. United States,*

100 Ct.Cl. 15, 30, 1943 WL 4247 (1943), as did agency boards. *Utah*, 384 U.S. at 410–11, 86 S.Ct. at 1554–55. The contractor could accept the contracting officer's findings, or it could appeal the dispute *de novo* direct to the Court of Claims. *Id.* at 411–12, 86 S.Ct. at 1555. After enactment of the CDA in 1978, the law remained unchanged in this regard. The agency, through its contracting officer, was still authorized to issue findings on breach claims, 41 U.S.C. § 605(a), and those findings were nonbinding if the contractor sought *de novo* review in the Claims Court. *Id.;* 41 U.S.C. § 609(a)(3) (1988).

Second, the majority and the government's reliance on *Bannercraft Clothing* is misplaced. Nowhere in its opinion does the Supreme Court hold that prior findings of the contracting officer cannot be considered and afforded evidentiary weight. *Bannercraft Clothing* does not even discuss the proper level of evidentiary weight which can be afforded a contracting officer's findings. The evidentiary weight of an initial administrative decision was not even at issue in the case. Rather, the Court in *Bannercraft Clothing* merely stated that if a party chose to bring a renegotiation suit in the Court of Claims, that court would not be bound by prior agency determinations. *Id.* The statute at issue in *Bannercraft Clothing*, the Renegotiation Act of 1951, 50 U.S.C.App. §§ 1211–1233 (1970), was enacted eight years prior to the CDA and contained a provision expressly prohibiting the use of prior agency findings as evidence in a subsequent *de novo* proceeding. 50 U.S.C. § 1215(a) (1970);[9] *see Gibraltar Mfg. Co. v. United States*, 546 F.2d 386, 388, 212 Ct.Cl. 226 (1976). Significantly, no such provision exists in the CDA. Thus, even if *Bannercraft Clothing* tracked the majority's position, that case is inapplicable because the statute at issue is materially different from the CDA. If Congress intended to eliminate the evidentiary use of a contracting officer's testimony and decision in the CDA, as the majority and the govern-

ment now maintain, it would have included such a provision in the CDA as it had done earlier in the Renegotiation Act.

Moreover, the Supreme Court has held that prior findings can be used as evidence of the ultimate matters at issue in a subsequent *de novo* proceeding. *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1960 n. 39, 48 L.Ed.2d 416 (1976) (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 60, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974)); *Universal Camera Corp.*, 340 U.S. 474, 493–94, 71 S.Ct. 456, 467–68, 95 L.Ed. 456 (1951). In *Universal Camera*, a discharged employee filed a complaint with the National Labor Relations Board, alleging that his employment termination was an act of reprisal. The dispute was first heard by a "trial examiner" who found that the employee's discharge was not a reprisal. In a subsequent *de novo* hearing, the board found that the discharge was a reprisal and reversed some of the trial examiner's findings of fact. The case was then appealed to the appropriate circuit court of appeals, *see National Labor Relations Bd. v. Universal Camera Corp.*, 179 F.2d 749 (2d Cir.1950), which held that the trial examiner's contrary findings could not be used as evidence to support a finding of substantial evidence. *Id.* at 753. The Supreme Court then granted certiorari.

The Supreme Court ruled that the trial examiner's findings were available as evidence insofar as they were contrary to the findings of the review board in the subsequent *de novo* hearing. *Universal Camera Corp.*, 340 U.S. at 493–95, 71 S.Ct. at 467–68. The Court noted that the examiner's findings were not entitled to more weight "than in reason and in the light of judicial experience they deserve"; but that they should be accorded the relevance that they reasonably command in answering the comprehensive question of whether the evidence supporting the board's order was substantial. *Id.* at 496–97, 71 S.Ct. at 468–69.

9. The relevant statute states in part:
    "Whenever the Board makes a determination with respect to the amount of excess profits, and such determination is made by order, it shall ... prepare and furnish such contractor ... with a statement of such determination, of the facts used as a basis therefor, and of its reasons for such determination. *Such statements shall not be used in the Court of Claims as proof of the facts or conclusions stated therein."* (Emphasis added.)

The Court gave two grounds for allowing the inclusion of the trial examiner's findings as evidence in the subsequent *de novo* hearing: the trial examiner's report was a part of the record, and the trial examiner had personal contact with the witnesses and was therefore in the best position to judge their credibility. *Id.* at 493–96, 71 S.Ct. at 467–69. These two reasons also apply to a contracting officer's findings because the contracting officer's findings and conclusions, when admitted into evidence, are also part of the record, and the contracting officer's findings and conclusions derive from his or her responsibility for administering the contract, and resolution of any dispute before the agency.

**B. The relevant portion of *J.D. Hedin* should not be overruled.**

Since the CDA did not constitute a change in the law with respect to *J.D. Hedin*, the question then becomes whether the case should now be overruled in this *in banc* proceeding. Because the holding in *J.D. Hedin* is in accord with the provisions of the CDA and is as valid today as when it was written, it should not be overruled.

**1. The *J.D. Hedin* holding is in accord with the CDA.**

*J.D. Hedin* states that the contracting officer's findings of fact and conclusions based thereon may constitute a rebuttable presumption or admission. 41 U.S.C. § 605 provides that the contracting officer's findings of fact cannot be binding in a subsequent proceeding. Irrebuttable presumptions are binding, while presumptions which are rebuttable are nonbinding. *See Universal Restoration, Inc. v. United States,* 798 F.2d 1400, 1406 (Fed.Cir.1986). Accordingly, section 605 does not conflict with *J.D. Hedin.*

Further, since a contracting officer's findings are available as evidence, as discussed above, they can be used to create a rebuttable presumption without violating the CDA's *de novo* review requirement. Presumptions are used frequently in disputes reviewed *de novo. See* 2 Kenneth S. Broun *et al., McCor-*

*mick on Evidence* § 343, at 457–59 (John W. Strong ed., 4th ed. 1992) [hereinafter *McCormick* ]. For example, proof of six or more years of delay in filing a patent infringement suit creates a rebuttable presumption of laches. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1034–41 (Fed.Cir. 1992) (*in banc* ). In addition, proof that a letter has been addressed, stamped and mailed creates a rebuttable presumption that it has been delivered to the addressee; proof that a person who has been missing for seven years during which a diligent inquiry has proved unsuccessful creates a rebuttable presumption that the person has died; proof that a child was born to a woman at the time she was married creates a presumption that the offspring is the legitimate child of the husband. McCormick, *supra* § 343, at 457–59.

A presumption has been defined as "a rule of law, statutory or judicial, by which finding of a basic fact gives rise to existence of presumed fact, until presumption is rebutted." Black's Law Dictionary 1185 (6th ed. 1990). Although not evidence, a presumption can be a "substitute" for evidence if it is not rebutted. *Dunn v. Simmons,* 877 F.2d 1275, 1278 (6th Cir.1989), *cert. denied,* 494 U.S. 1061, 110 S.Ct. 1539, 108 L.Ed.2d 778 (1990).

The presence of a presumption does not relieve a contractor from the burden of proof it is required to bear under a *de novo* standard of review. Presumptions merely impose "on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but [do] not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast." Fed. R.Evid. 301. This was the case in *J.D. Hedin* where the contracting officer's finding was presumed to be accurate absent the introduction of rebuttal evidence by the government.[10]

10. Alternatively, one could characterize the presumption discussed in *J.D. Hedin* as an inference. "At one time 'presumption' was just another word for inference. In older evidence books it is common to see circumstantial evidence dis-

cussed under the heading of 'presumptive evidence'." 21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5122 (1977).

In addition, the CDA's *de novo* provision is not violated if the contracting officer's decision is characterized as an admission. Admissions of government delay are "pieces of evidence in favor of the contractor, to be weighed along with the other evidence as to how much delay was actually caused by the government's action or inaction" but which, when contradicted by other more direct, convincing evidence, are of "little weight." *Winston Bros. v. United States*, 130 F.Supp. 374, 383, 131 Ct.Cl. 245 (1955). In the case at bar, the contracting officer as the government's designated representative for the purpose, determined that the government was responsible for 260 days of the total, longer delay. Before the Claims Court no contradictory evidence was presented. It logically follows that this admission need not be re-proved, if it remains undisputed by the government.

2. *J.D. Hedin* should not be overruled because its reasoning remains valid.

Contracting officers are required to be unbiased, impartial arbiters of contractor disputes, 48 C.F.R. § 1.602–2 (1992); however, they must also be the guardians of the government's interests. 48 C.F.R. § 1.602–2(b) (1992). Consequently, a contracting officer's duty is to balance contradictory interests, placing that of the government at the fore. With this in mind, the Court of Claims explained why contracting officer findings adverse to the government may constitute a presumption or admission of the extent of the government's liability:

> It is true that we are not bound by the findings of the contracting officer in a claim for damages due to delay, but there is a strong presumption that the delay was not less than that found. The contracting officer, or his representative, had day to day contact with the work and was in the best position of anyone, except the contractor, to know the extent of the delay. He is supposed to weigh the facts with an even hand before rendering his decision; but it cannot be overlooked that he is the defendant's selection and its own employee. He

is not apt to err on the side of the contractor and against his employer, whose interests he is employed to guard and protect. (Citation omitted.)

*Irwin & Leighton*, 101 Ct.Cl. at 475.

Additionally, consider that under the CDA only the contractor, and not the government, can appeal from a contracting officer's final decision. 41 U.S.C. § 609 (1988). *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1562 n. 3 (Fed.Cir.1990), *cert. denied*, 499 U.S. 919, 111 S.Ct. 1308, 113 L.Ed.2d 243 (1991) ("The United States ... cannot appeal to the Claims Court."); *Dewey Elecs. Corp. v. United States*, 803 F.2d 650, 654–55 (Fed. Cir.1986).[11] This was also the case prior to the CDA. *See S & E Contractors, Inc. v. United States*, 406 U.S. 1, 13, 92 S.Ct. 1411, 1418, 31 L.Ed.2d 658 (1972).

"[P]resumptions, whether created by statute or by judicial ruling, 'arise out of considerations of fairness, public policy and probability.'" *Aukerman*, 960 F.2d. at 1034 (citing *Cornetta v. United States*, 851 F.2d 1372, 1380 (Fed.Cir.1988)). Any finding made by the contracting officer which is adverse to the government is likely to be reliable. This is because one would not expect the contracting officer, who is required to represent the government's interests, to err against his or her principal, especially when that principal has no right to appeal. Thus, if the contracting officer finds that a contractor is entitled to some measure of compensation and the government cannot produce a minimum amount of evidence to contradict that finding, why not permit the Claims Court to presume that the amount awarded was proper? This would allow the court to save time and move more quickly to consider the contractor's claims for additional damages as well as any counterclaims which may have been filed by the government. The alternative that the majority now imposes—to require the contractor to adduce the raw data underlying the findings—serves no public purpose, and adds no fairness to the proceeding.

---

**11.** In an action before the Court of Federal Claims, the government may bring counterclaims and does have the right to appeal an adverse decision to the Federal Circuit. 41 U.S.C. § 607(g)(1)(B).

## CONCLUSION

A contracting officer's findings and conclusions are available as evidence to be weighed with all other evidence in the record to determine the matters at issue in a subsequent *de novo* proceeding in court. In the case at bar, the Claims Court did not simply defer to such findings or conclusions, but said "the contracting officer's decision is evidence before the court that must be considered and weighed." *Wilner v. United States*, 26 Cl.Ct. at 279., There was no contrary evidence offered by the government. Lengthy and useful precedent holds that a decision against the interest of the government by the government is an admission, an inference, or a rebuttable presumption, in the contractor's favor. We have not been pointed to any authority to the contrary. A *de novo* hearing must draw its conclusions from the evidence of record. In this case the trial court weighed the government's evidence and that of the plaintiff, and found that the preponderance was in the government's position on the issue of the amount of delay caused by the government. The trial court did not deem the contracting officer's evidence "binding" in the sense used by the majority's interpretation of the CDA. That evidence was just more weighty in a *de novo* review where it was proper to consider it, for the contracting officer testified that his finding was derived from determinations of a technical analyst, a consultant and counsel. It was unrebutted. Relitigation to reintroduce the underlying documents and testimony was unnecessary, and was not suggested by either side at trial. A trial *de novo* does not require relitigation of matters that are undisputed and supported by preponderant evidence, as found by a competent trial judge. In my twenty-three years as a trial judge, unreversed, I would have held the same way. It accords with precedent, justice, and legislative history of the CDA. The majority's judicial and legislative revisionism does not bear analysis.

For these reasons, I dissent. The trial court should be affirmed and the important, long-standing precedent of *J.D. Hedin* should not be discarded.