**L & D SERVICES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 95–245C.

United States Court of Federal Claims.

Jan. 18, 1996.

Lyle Moe, Grand Forks, North Dakota, for plaintiff.

S. Lane Tucker, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Assistant Director, Washington, D.C., for defendant.

*OPINION*

ANDEWELT, Judge.

In this government contract action brought pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601–613, plaintiff, L & D Services, Inc., seeks $600,000 in alleged damages under a contract it entered with the United States Department of the Army (the Army) covering lawn mowing services at Fort Polk, Louisiana. This action is before the court on defendant's motion to dismiss the complaint for lack of jurisdiction. Defendant alleges that plaintiff failed to file the instant complaint within the 12–month statutory period set forth in Section 609 of the CDA. For the reasons set forth below, defendant's motion to dismiss is granted.

I.

Between July 5 and August 2, 1993, plaintiff presented a series of claims to the contracting officer seeking payments under the instant contract. Prior to December 1, 1993, the contracting officer issued written final decisions denying certain of these claims. In each decision, the contracting officer advised

plaintiff of its right to seek review of the contracting officer's final decision and of the applicable time limit for seeking such review. For the remaining claims, the contracting officer requested supporting documentation from plaintiff. On December 1, 1993, plaintiff submitted a comprehensive "Contractor's Claim" (the December 1 claim) which included a "Fact" section and a "Summary of Claim" section. The "Fact" section contained 11 factual allegations, labeled (a)-(k), which detailed prior dealings between plaintiff and the Army, including the series of claims plaintiff previously had submitted to the contracting officer. The "Summary of Claim" section presented 12 distinct requests for payment, labeled (a)-(l), with a dollar amount specified for each request (e.g., (a) "Increase in Acreage," $35,000; (b) "Preparation of Claim," $20,000; (c) "Loss of Business," $50,000; and (h) "Constructive Change, Acceleration," $100,000). The amount plaintiff sought in the "Summary of Claim" section included funds that plaintiff had requested in its previously filed claims.

The contracting officer initially responded to the December 1 claim on January 5, 1994, in both a telephone call and a follow-up letter. The January 5 letter explained:

Following a review of the subject claim, the Government auditors have requested documentation justifying the claim be forwarded through this office.

Upon receipt of the above documentation, the claim will be evaluated.

Plaintiff failed promptly to provide the requested documentation, and on February 8, 1994, the contracting officer issued a letter that purported to be a final decision denying the December 1 claim. The letter described the government's position with respect to each of the 11 factual allegations. For those allegations that mentioned a previously submitted claim, the contracting officer explained the status of the claim, including whether or not the contracting officer previously had issued a final decision on that claim.

In a paragraph following the discussion of the fact allegations, the contracting officer denied the monetary relief plaintiff sought in the "Summary of Claim" section and explained, as follows:

Your letter that accompanied the [December 1] claim states "Should you require additional information on this claim, please call my office or submit your request in writing." You were contacted on January 5, 1994 and it was explained to you that the Government Audit Agency had requested documentation justifying the claim be forwarded through this office. You responded that you would forward the justifying documentation. In the Government's followup letter also dated January 5, 1994, it was explained that upon receipt of the documentation, the claim would be evaluated. To date the documentation has not been received. Since the contracting officer cannot evaluate the claim this office has no alternative but to deny the claim.

Plaintiff received the contracting officer's February 8, 1994, letter on February 11. Three days later, on February 14, plaintiff submitted documentation that purported to support its December 1 claim. In a March 2, 1994, letter in response, the contracting officer did not reconsider her prior position and instead explained: "This office issued a final decision to deny the claim. This was explained in the final decision letter issued by this office, received by you on February 11, 1994."

On March 18, 1994, the contracting officer terminated the contract for default. Plaintiff filed the instant action on March 20, 1995. In its complaint, plaintiff presents the same 12 grounds for monetary compensation as it did in the December 1 claim.[1]

## II.

Section 605(a) of the CDA requires a contractor to submit claims under a government contract in writing to the contracting officer. After the contracting officer issues a decision on a claim, the contractor may seek review of that decision either through the agency

---

1. Although the complaint presents the same 12 grounds for compensation, plaintiff increased the total requested amount by $115,000. Specifical- ly, plaintiff increased the amounts requested for "Increase in Acreage" ($35,000 to $100,000) and for "Loss of Business" ($50,000 to $100,000).

board of contract appeals (Section 607) or in a direct action in this court (Section 609). A contractor may bring a direct action in this court challenging the denial of a claim "within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim" (Section 609(a)(3)). Herein, plaintiff received the contracting officer's purported denial of the December 1 claim on February 11, 1994, more than 12 months before plaintiff filed the instant suit on March 20, 1995. Hence, if the contracting officer's February 8, 1994, letter is what it purports to be, *i.e.*, a final decision denying plaintiff's December 1 claim, then plaintiff filed the instant suit out of time and this court must dismiss the complaint for lack of jurisdiction under RCFC 12(b)(1).

### III.

█ Plaintiff contends that the contracting officer's February 8, 1994, letter does not constitute a Section 605 decision that commences the running of the 12-month statute of limitations set forth in Section 609 because the letter failed to notify plaintiff that the contracting officer intended the letter to serve as a final decision. Plaintiff alleges that the letter lacked a tone of finality and left plaintiff with the impression that the contracting officer was open to future negotiations and would reconsider plaintiff's claim upon receipt of additional substantiating information. Plaintiff argues that it was not until March 18, 1994, when defendant terminated the contract for default, that the contracting officer, in effect, indicated that she intended her February 8 letter to be a final decision denying plaintiff's December 1 claim.

Plaintiff's interpretation, however, ignores the direct and unambiguous wording of the February 8 letter. The contracting officer classified her decision as a *"final* decision" (emphasis added) and offered plaintiff only two possible avenues of recourse—an appeal to the board of contract appeals or a direct action in this court. There is no suggestion in the letter that the contracting officer was either soliciting information or seeking to induce negotiations.

Plaintiff relies upon the following portion of the February 8 letter to support a contrary interpretation:

> Fact b: The Government requested proof of the July 5, 1993 claim and did not receive a response to its request. Therefore, a decision could not be made.

> \* \* \* \* \* \*

> Fact f: The Government believes the allegations in this Fact are for the same claim in Fact b. Response not necessary.

Plaintiff apparently contends that in stating that "a decision could not be made" the contracting officer was indicating that she would make a decision in the future if plaintiff provided the requested proof. This is not, however, a reasonable interpretation.

The February 8, 1994, letter, in effect, consists of two distinct parts. In the first part, which contains the statements upon which plaintiff relies, the contracting officer set forth "the Government's responses to Facts a through k as listed in the [December 1] claim." Not until the second part of her letter did the contracting officer respond to plaintiff's monetary requests contained in the "Summary of Claim" section of the December 1 claim. In the statements upon which plaintiff relies, the contracting officer was merely explaining the history of the previously submitted claims to which plaintiff referred in facts (b) and (f). The contracting officer provided a similar history for each of the remaining factual contentions. In stating that "a decision could not be made" because the government did not receive a response to its request for proof, the contracting officer was simply explaining the status of the claim prior to the issuance of the February 8 letter. Because the contracting officer was referring to the prior status of the claim, she phrased the statement in the past tense ("a decision *could* not be made" (emphasis added)) rather than the present tense ("a decision *cannot* be made").

In the second part of the February 8 letter, the contracting officer specifically responded to plaintiff's monetary claims and made her unequivocal decision denying the December 1 claim. Because plaintiff had not yet provided the requested documentation,

the contracting officer concluded that "this office has no alternative but to deny the claim." The contracting officer then stated that "this is a final decision." The word "final" is not ambiguous. Viewed in its entirety, the contracting officer's February 8, 1994, letter is not misleading and is sufficiently definite to constitute a final decision.

Reference to the wording of Section 605 supports the conclusion that the February 8, 1994, letter constitutes a final decision. Section 605(a) establishes two pertinent requirements for a contracting officer decision. The contracting officer "[ (1) ] shall state the reasons for the decision reached and [ (2) ] shall inform the contractor of his rights as provided in this chapter." The contracting officer's February 8 letter satisfies both of these requirements. The letter stated the reasons for the decision, *e.g.*, the absence of documentation that would permit evaluation of the claims, and informed plaintiff of its rights under the CDA, including the right to bring a direct action in this court within 12 months of the contracting officer's decision.[2] Because the contracting officer's February 8, 1994, letter satisfies the requirements of Section 605, the letter constitutes a final decision which commenced the running of the 12–month statute of limitations.

## IV.

■ Alternatively, plaintiff argues that even if the contracting officer's February 8, 1994, letter satisfies certain requirements of a Section 605 decision, it could not so qualify because Section 605 obliged the contracting officer, prior to issuing her decision, to wait longer than she did for plaintiff to provide the requested supporting documentation. To support this contention, plaintiff relies upon Section 605(c)(3), which provides:

The decision of a contracting officer on submitted claims shall be issued within a reasonable time, in accordance with regulations promulgated by the agency, taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor.

Plaintiff argues that this provision required the contracting officer, before issuing a decision denying the December 1 claim, to wait a reasonable time for plaintiff to submit adequate information in support of its claim. Plaintiff then argues that the contracting officer failed to wait a reasonable period.

Plaintiff's proposed interpretation, however, misreads the literal requirements of Section 605(c)(3). By obliging a contracting officer to issue a decision "*within* a reasonable time" (emphasis added), Section 605(c)(3) serves only to establish the outer time limit for a decision—the time *within which* a contracting officer must act. Section 605(c)(3) does not establish any minimum time limit and does not require a contracting officer to wait a reasonable time before issuing a decision.

This interpretation is consistent with the other requirements of Section 605(c). Section 605(c)(1) provides that for claims of $50,-000 or less, a contracting officer shall issue a decision "*within* sixty days" (emphasis added) of receipt of the claim.[3] Section 605(c)(2) provides that for claims in excess of $50,000, a contracting officer shall, "*within* 60 days" (emphasis added) of receipt of the claim, either issue a decision or, in the alternative, "notify the contractor of the time within which a decision will be issued." Thus, by obliging a contracting officer to issue its decision "*within* a reasonable time" (emphasis added), Section 605(c)(3), *inter alia*, limits a

---

**2.** Even if plaintiff initially misunderstood that the contracting officer intended her February 8, 1994, letter to constitute a final decision denying plaintiff's December 1 claim, plaintiff's receipt of the contracting officer's March 2, 1994, letter reaffirming her prior decision should have resolved any such misunderstanding. In her March 2 letter, after receiving plaintiff's additional information, the contracting officer did not reconsider the claim but rather reiterated that she had previously issued a final decision. Plaintiff presumably received the March 2 letter more

than 12 months before filing the instant suit. Hence, plaintiff should not have been disadvantaged by any such misunderstanding.

**3.** These statutory amounts have been raised to $100,000. Federal Acquisition Streamlining Act of 1994, Pub.L. No. 103–355, § 2351(b), 108 Stat. 3322 (effective Oct. 13, 1994). The $50,000 figure, however, applied at the time of the contracting officer's consideration of the December 1 claim.

contracting officer's discretion in Section 605(c)(2)(B) when notifying the contractor of the time within which the contracting officer will issue a decision. Therefore, in pertinent part, Section 605(c) establishes maximum periods within which a contracting officer must issue a decision on a claim—either within 60 days or within a reasonable time. Section 605(c) does not limit a contracting officer's issuance of a decision prior to the expiration of the maximum time limit, *i.e.*, it neither requires a contracting officer to wait a reasonable time *before* issuing a decision nor otherwise impairs a contracting officer's discretion to deny a claim at any time before the expiration of the statutory time period.

Analysis of the interaction between Sections 605 and 609 confirms this interpretation. Sections 605 and 609 together bar a contractor from instituting suit on a contract claim until after the contractor presents the claim in writing to the contracting officer and the contracting officer issues a decision on the claim. The CDA thereby assures that the contracting officer, who typically is familiar with the facts concerning contract performance, has an opportunity to resolve a contract dispute before the contractor seeks judicial resolution. But an absolute bar on a contractor filing suit prior to receiving a contracting officer decision could unduly prejudice a contractor because the contracting officer could leave the contractor in legal limbo by failing to issue a decision. Section 605 addresses this problem by (1) establishing maximum time limits for a contracting officer decision (Section 605(c)(1)–(3)), (2) authorizing a contractor to request the agency board of contract appeals to order the contracting officer to issue a decision by a specified date (Section 605(c)(4)), and (3) providing that "[a] failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a

decision by the contracting officer denying the claim and will authorize the commencement of ... suit on the claim" (Section 605(c)(5)).

For claims in excess of $50,000, the CDA does not establish any certain maximum number of days within which a contracting officer must issue a decision. Rather, Section 605(c)(3) allows a contracting officer to issue a decision beyond 60 days after claim submission so long as the contracting officer provides notice to the contractor as to the time within which a decision will be issued and so long as any such extension is reasonable in duration. By not specifying a certain number of days within which a contracting officer must issue a decision and instead allowing the contracting officer a reasonable time, Section 605(c)(3) provides the contracting officer with flexibility to handle large claims which vary considerably in size and complexity. The lack of a specific and uniform statutory deadline, however, leaves some ambiguity as to precisely when the time period allowed for a contracting officer decision has expired and hence, when the contractor can proceed with a suit.[4] Section 605(c)(3) addresses this ambiguity by specifying factors that should be considered when determining what constitutes a reasonable time. The reference in Section 605(c)(3) to the adequacy of the information presented by the contractor therefore helps both the contractor and the contracting officer calculate whether the maximum time has passed and hence, when the contractor may institute suit.[5]

Thus, the wording of Section 605(c) and the interaction between Sections 605 and 609 support the conclusion that the reference in Section 605(c)(3) to the adequacy of the information provided by the contractor is directed at establishing the appropriate maximum time within which the contracting officer

4. Section 605(c)(2)(B) provides that a contracting officer shall notify a contractor as to the date by which it will render a decision, but that date may be "unreasonable" and in violation of Section 605(c)(3).

5. The reference to the adequacy of information presented by a contractor promotes the interests of both the contractor and the contracting officer. This reference promotes the contractor's

interests in that the quick provision by the contractor of adequate information to support its claim will tend to shorten the maximum time within which the contracting officer must issue its decision. The reference promotes the interests of the contracting officer in that the contractor's failure to provide such information would tend to lengthen the time allowed the contracting officer to issue a decision.

must issue a decision. Nothing in the CDA supports plaintiff's contention that this reference also was intended to limit the contracting officer's discretion to issue a decision at any time after receipt of the claim but before expiration of the maximum time period allowed in Section 605.

## V.

One additional point warrants mention. To interpret the CDA as granting a contracting officer the discretion to determine when, within the statutory maximum time period, to issue a Section 605 decision does not imply that Congress did not expect that contracting officers would wait a reasonable time before issuing a final decision. Rather, instead of mandating such a wait, Congress apparently chose to rely upon existing incentives that otherwise encourage a contracting officer to take a reasonable time to accumulate relevant documentation before issuing a decision on a claim. In this regard, a contracting officer understands that denial of a claim does not necessarily end a dispute. If a contractor is not satisfied with a contracting officer decision, the contractor may litigate the merits of its claim either in the appropriate board of contract appeals or in this court. Any such adversarial litigation would generally involve significant costs to the contracting agency, including the allocation of significant time from the contracting officer. In this setting, contracting officers appreciate that a careful analysis of the merits of a contractor claim, in addition to promoting fairness and accuracy, benefits the contracting agency by avoiding litigation costs and by increasing the likelihood of the agency's success in any litigation that does occur.[6]

Congress' decision to rely upon existing incentives rather than to create a statutory requirement obliging a contracting officer to wait a reasonable time before issuing a decision has the benefit of avoiding the indefiniteness and related litigation costs that would result from such a statutory requirement. If Congress enacted such a statutory

requirement, then in instances where a contracting officer issues a decision denying a claim prior to the expiration of the maximum statutory time limit, an argument potentially could be made that the decision does not constitute a Section 605 decision from which a contractor could seek court review. Because the existence of a proper Section 605 contracting officer decision is a prerequisite for this court's jurisdiction, *Do–Well Machine Shop, Inc. v. United States,* 870 F.2d 637, 640 (Fed.Cir.1989), either party could present such an attack on this court's jurisdiction at any time during the litigation by contending that the contracting officer did not wait a reasonable time before denying the claim. The contractor would have an incentive to make such an attack whenever, as here, its suit would otherwise be barred by the statute of limitations.

### Conclusion

For the reasons set forth above, the contracting officer's February 8, 1994, letter constitutes a Section 605 final decision and thus, defendant's motion to dismiss must be granted. Accordingly, the Clerk of the Court shall enter judgment dismissing plaintiff's complaint. No costs.

IT IS SO ORDERED.

---

**6.** Any litigation of a claim before a board of contract appeals or before this court is on a *de novo* basis and the contractor may rely upon evidence not considered by the contracting officer. Section 609(a)(3). *See Wilner v. United*

*States,* 24 F.3d 1397, 1401 (Fed.Cir.1994). Hence, a contracting officer would not gain any tactical advantage in subsequent litigation by denying a claim in advance of the contractor supplying supporting documentation.