# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Magwood Services, Inc. ) | ASBCA No. 59293 |
| ) | |
| Under Contract No. W912PQ-13-C-0016 ) | |

APPEARANCE FOR THE APPELLANT:        Mr. Heyward R. Manigault
                                                President

APPEARANCES FOR THE GOVERNMENT:    Raymond M. Saunders, Esq.
                                             Army Chief Trial Attorney
                                            Erica S. Beardsley, Esq.
                                              MAJ Ildiko Szentkiralyi, JA
                                            Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE JAMES

This appeal arises from the contracting officer's (CO's) 24 April 2014 decision that denied the $72,283.00 termination settlement proposal of Magwood Services, Inc., (Magwood) under the captioned contract. The Board has jurisdiction of the appeal under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. Magwood elected an expedited disposition of the appeal and to submit its case upon the record under Board Rules 12.2[1] and 11. The government elected a hearing, which was held on 6 August 2014 in West Point, New York. The parties have submitted post-hearing briefs. The Board is to decide both entitlement and quantum (tr. 1/10).

## SUMMARY FINDINGS OF FACT

1. Contract No. W912PQ-13-C-0016 (contract 16) was awarded to Construction Solutions Group, LLC, on 17 July 2013 and was cancelled (Bd. corr. file, app. 21 July 2014 filing; tr. 1/27). Contract 16 was awarded to Magwood effective 12 September 2013 (R4, tab 1 at 1-2 of 42, tab 3, ex. B). Contract 16 required Magwood to replace two diversion holding tanks at Stratton Air National Guard Base, Scotia, New York, for the fixed-price of $66,496.00 (R4, tab 1 at 1, 3 of 42).

---

[1] The Contract Disputes Act, implemented by Board Rule 12.2, provides that this decision shall have no value as precedent, and in the absence of fraud shall be final and conclusive and may not be appealed or set aside.

2. Contract 16 included the Federal Acquisition Regulation (FAR) 52.249-2, TERMINATION FOR THE CONVENIENCE OF THE GOVERNMENT (FIXED PRICE) (APR 2012) clause, which provided in pertinent part:

(e) After termination, the Contractor shall submit a final termination settlement proposal to the [CO] in the form and with the certification prescribed by the [CO]....

(f) Subject to paragraph (e) of this clause, the Contractor and the [CO] may agree upon the whole or any part of the amount to be paid...because of the termination. The amount may include a reasonable allowance for profit on work done. However, the agreed amount, whether under this paragraph [(f)] or paragraph (g) of this clause, exclusive of costs shown in subparagraph (g)(3) of this clause, may not exceed the total contract price....

(g) If the Contractor and the [CO] fail to agree on the whole amount to be paid because of the termination of work, the [CO] shall pay the Contractor the amounts determined by the [CO] as follows, but without duplication of any amounts agreed on under paragraph (f) of this clause:

(1) The contract price for completed supplies or services accepted by the Government...not previously paid for, adjusted for any saving of freight or other charges.

(2) The total of—

(i) The costs incurred in the performance of the work terminated, including initial costs and preparatory expense allocable thereto, but excluding any costs attributable to supplies or services paid or to be paid...;

....

(iii) A sum, as profit on subdivision (g)(2)(i) of this clause, determined by the [CO] under 49.202 of the [FAR], in effect on the date of this contract, to be fair and reasonable; however, if it appears that the Contractor would have sustained a loss on the entire contract had it been completed, the [CO] shall allow no profit under this

2

subdivision (iii) and shall reduce the settlement to reflect the indicated rate of loss.

(3) The reasonable costs of settlement of the work terminated, including—

(i) Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data;

....

(i) The cost principles and procedures of Part 31 of the [FAR], in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause.

(j) The Contractor shall have the right of appeal, under the Disputes clause, from any determination made by the [CO] under paragraph (e), (g), or (l) of this clause....

(R4, tab 1 at 36-38 of 42)

3. From mid-September to 16 October 2013 the parties disagreed whether Magwood could submit a "Tripartite Escrow Agreement" (TEA) instead of a payment bond required by the government (R4, tabs 3, 7). From 26 September to 13 December 2013 Magwood submitted contract progress schedules and submittals for the holding tanks and components (R4, tabs 4-6, tab 11 at 3, tab 21 at 1-2).

4. Contract 16 had no FAR 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984) clause (R4, tab 1). On 16 October 2013 CO MSgt Wanda Yarbor issued a decision to terminate contract 16 for default (R4, tab 13). Magwood appealed from that default termination decision on 17 October 2013, which appeal was docketed as ASBCA No. 58968 (R4, tab 9 at 1).

5. On 6 December 2013 the parties entered into a Settlement Agreement with respect to ASBCA No. 58968 (R4, tab 9 at 1-2, 5). On 23 December 2013 the parties agreed that the settlement was null and void (app. supp. R4, tab 4 at 4-24, 4-28). The Board dismissed ASBCA No. 58968 on 24 March 2014.

6. On 24 February 2014 CO Yarbor issued unilateral Modification No. P00003 "terminating the Contract for the convenience of the Government" (R4, tab 13).

3

7. On 11 March 2014 Magwood submitted a termination settlement proposal (TSP) for the amount of $72,283.00 to CO Yarbor on Standard Form 1436 (SF 1436). The SF 1436 listed 19 items, some correlated to "Schedules" A through H, on which Magwood provided the following cost elements as summarized below:

| | |
|---|---|
| Other Costs (from Schedule B) | $20,398.00 |
| General and Administrative Expenses (from Schedule C) | $40,504.00 |
| Total Costs (Items 1 thru 6) | $60,902.00 |
| Profit (Explain in Schedule D) | $ 9,136.00 |
| Total Costs (Items 7 and 8) | $70,038.00 |
| Settlement Expenses (from Schedule E) | $ 2,245.00 |
| Net Payment Requested | $72,283.00 |

## Schedule B – Other Costs

| Item | Explanation | Amount |
|---|---|---|
| Tripartite Escrow Agreement | $997.44 TEA fee, $997 execution fee, Paperwork prep: $667 (1 hr. Pres. @ $35/hr., 30.75 hrs. O.A. @ $20/hr., 1hr. Clerk @ $16.50/hr.) | $2,662.00 |
| Appeal costs | Supplies/mail: $25, Paperwork prep: $17,711 (217 hrs. Pres. @ $35/hr. 302 hrs. O.A. @ $20/hr., 247 hrs. Clerk @ $16.50/hr.) | $17,736.00 |

## Schedule C – General and Administrative Expenses

| Detail of Expenses | Method of Allocation | Amount |
|---|---|---|
| Daily Rate, Proj. start to Term. for Default | 37[2] days @ $244/day | $9,028.00 |
| Daily Rate, Term. for Default to issue of Term. for Convenience of Gov't | 129[2] days @ $244/day | $31,476.00 |

---

[2] The actual time periods are not 37 + 129 = 166 days; they are 34 + 131 = 165 days.

4

\* Gen Cond. = 13% of contract + 1% of line items 1, 4, 5, 6, 7, 8, 10 = 7% + 1/2% of line items 3, 9, 11, 12 = 2%. Total of 22% of contract price = 14,630/60 days = 244/day\*

### Schedule D – Profit

| Explanation | Amount |
|---|---|
| 15% ($60,902 x 15%) | $9,136.00 |

### Schedule E – Settlement Expenses

| Item | Explanation | Amount |
|---|---|---|
| President settlement prep. | 27 hrs. @ $35/hr. | $945.00 |
| Office Administrator settlement prep. | 32 hrs. @ $20/hr. | $640.00 |
| Clerk settlement prep. | 40 hrs. @ $16.50/hr. | $660.00 |

(R4, tab 14 at 2-4)

8. Mr. Manigault explained the foregoing terms in the TSP: he is "Pres."; his wife Shirley Manigault is "Office Administrator" ("O.A."); and Magwood employee Anastasia Austin is "clerk" (tr. 1/71, 85, 118; R4, tab 25 at 2 of 8). These three persons were Magwood's only employees who performed office work on contract 16 (tr. 1/119). Magwood did not perform any field or physical work on contract 16 (tr. 1/66).

9. On 31 March and 16 April 2014 Magwood sought CO Yarbor's advice on the status of its TSP (R4, tabs 16, 17). On 24 April 2014 CO Yarbor denied in its entirety Magwood's TSP for $72,283 and advised Magwood of its appeal rights (R4, tab 18). On 6 May 2014 Magwood appealed that decision to the Board, which was docketed as ASBCA No. 59293 (R4, tab 19).

10. TEA Costs – Schedule B. Regarding the TEA, from 24 September through 16 October 2013 Magwood received 22 emails from the CO and others, and sent 16 emails in reply, totaling 200 lines in 50 paragraphs (R4, tab 25 at 3 of 8, ¶¶ 9-11; app. supp. R4, tab 2). The record substantiates Magwood's payment of the $997.44 and $997 TEA fees (app. supp. R4, tab 2 at 2-7, 2-8). Mr. Manigault testified that he spent 30.75 hours, and Mrs. Manigault spent 1 hour, discussing TEA terms with the CO and TEA participants (tr. 1/74-75). Mr. Manigault stated that his $35/hr. rate "is the estimate time that it takes to do a job" (tr. 1/80). Mrs. Manigault said her $20/hr. rate was "fair...for what I do" (tr. 1/139).

5

11. Appeal Costs – Schedule B. Magwood identified these "Appeal Costs" as spent "on the Appeal (Docket #58968)" (R4, tab 25 at 3-4 of 8, ¶¶ 12-14).

12. G&A Expenses – Schedule C. Magwood described the work encompassed in the G&A costs claimed from award to default termination of contract 16 as follows:

> G&A time…may include…correspondence, production planning, creating a project schedule, talking with suppliers, contract management, organizing and/or filling out project paperwork, personnel organization, time spent working with supplier to create submittals, and any other time spent preparing for the contract work to begin.… The daily rate also includes costs for office supplies related to the management of the project, such as paper and ink for the printer, binders, pens, writing pads, etc.

Magwood described the work encompassed in the claimed G&A costs from default termination to convenience termination of contract 16 as "keeping the project open, filing any paperwork associated with the contract and keeping current with what was happening with the contract…as well as office supplies needed to do so." (R4, tab 25 at 5-6 of 8, ¶¶ 22, 23) During the 14-month period May 2013 through June 2014, Magwood performed nine commercial and federal agency contracts other than contract 16 (R4, tab 25 at 7 of 8). The record contains no Defense Contract Audit Agency audit report on Magwood's TSP, nor any evidence on how Magwood allocated its G&A expenses to the 10 contracts performed in 2013-2014.

13. Settlement Expenses – Schedule E. Magwood described discussions about identifying employee hours, rates, supplies and mail costs, and preparing and proofreading the TSP (R4, tab 25 at 4 of 8, ¶¶ 15-17).

14. During the period of contract 16 performance from September 2013 through March 2014, Anastasia Austin worked 164.36 hours and was paid $1,685.28, an average hourly rate of $10.25 (app. supp. R4, tab 1 at 1-1, 1-2, tab 3 at 3-1 - 3-3, tab 5 at 5-1, 5-2). Mr. and Mrs. Manigault own Magwood and are salaried employees who do not receive regular paychecks or keep regular hourly timesheets (R4, tab 25 at 5 of 8, ¶¶ 20-21; tr. 1/120-21). Magwood's 2012 Corporation Income Tax Return, line 12, "Compensation of officers," stated $4,694 (R4, tab 23 at 2). That $4,694 divided by 2,080 annual working hours yields $2.26 per hour for both Mr. and Mrs. Manigault in 2012. No tax returns or other records of Magwood officer compensation in 2013 and 2014 are in the record.

6

## DECISION

Magwood argues that CO Yarbor's 24 April 2014 decision violated FAR 49.103, "When possible, the TCO should negotiate" and FAR 49.109-7(b) requirement to give it 15 days notice to substantiate its TSP before unilaterally determining the settlement amount; thus, that decision "should not stand" (app. br. at 3, 4). FAR 49.103 is hortatory, not mandatory. Magwood cites no authority, and none is known to the Board, that noncompliance with the FAR 49.109-7(b) 15-day notice requirement invalidates a CO's final decision. Magwood disputes the reasons to deny the TSP stated in the CO's 24 April 2014 decision (app. br. at 8-15). *"De novo review [by the Board] precludes reliance upon the presumed correctness of the [CO's] decision. Thus, once an action is brought following a [CO's] decision, the parties start...before the board with a clean slate." Wilner v. United States*, 24 F.3d 1397, 1401-02 (Fed. Cir. 1994) (citations omitted).

With respect to TSP Schedule B TEA costs, the $997.44 TEA fee and the $997 execution fee Magwood paid were proven (finding 10). The 31.75 hours claimed for Mr. and Mrs. Manigault's efforts do not appear to be excessive for the 38 emails and related discussions on the TEA issue. The record supports no more than[3] $2.26/hr. for their hours, or $1.13 for each of Mr. and Mrs. Manigault (finding 14). The Board concludes that TEA costs are allowable to the extent of $2,066.20 ($997.44 + $997.00 + $71.76).

With respect to TSP Schedule B "Appeal costs," contract 16's FAR 52.249-2 TERMINATION FOR THE CONVENIENCE OF THE GOVERNMENT clause, ¶ (i), provides that the FAR 31 cost principles shall govern all costs claimed under that clause (finding 2). FAR 31.205-47(f)(1) expressly disallows "Costs...incurred in connection with...claims or appeals...against the Federal Government." Accordingly, Magwood's "Appeal costs" in the amount of $17,736.00 for its efforts in connection with ASBCA No. 58968 (findings 4-5, 7, 11) are unallowable.

With respect to TSP Schedule C, G&A expenses, the work Magwood described as production planning, project scheduling, talking with suppliers, project paperwork, creating submittals, project preparation for work, keeping the project open, keeping current on contract happenings (finding 12) is directly allocable to contract 16. *See* FAR 31.201-4(a). Office supplies such as paper, printer ink, binders, pens, writing pads, appear to be necessary to the overall operation of Magwood's business. *See* FAR 31.201-4(c), 31.203(b). However, indirect costs including G&A costs are to be allocated to "final cost objectives" (FAR 31.203(b)), which include contracts (FAR 31.001). Hence Magwood was required to allocate its G&A costs to its 10

---

[3] The qualifier "no more than" is used because, lacking Magwood's 2013-2014 cost data, its 2012 costs are used rather than disallowing such cost items.

commercial and government contracts performed in 2013-2014 (finding12). But the record contains no evidence of how Magwood allotted its G&A expenses to those 10 contracts (*id.*). Therefore, no G&A costs may be allowed.

With respect to TSP Schedule D, Profit, we accept Magwood's 15% rate (finding 7). The amount allowed for Schedule B is $2,066.20. Profit at 15% of $2,066.20 is $309.93.

With respect to TSP Schedule E, settlement expenses, the hours Magwood claimed for its employees' settlement preparation work are reasonable. The hourly rates Magwood claimed are not supported by the record. Applying the hourly rates in finding 14, the following amounts for settlement preparation are allowed:

| Employee | Hours | Rate/hr. | Amount |
|---|---|---|---|
| President | 27 | $ 1.13 | $ 30.51 |
| Office Adm'r | 32 | $ 1.13 | $ 36.16 |
| Clerk | 40 | $10.25 | $410.00 |
| Total: | | | $476.67 |

In summary, the costs allowed in this decision are:

| | |
|---|---|
| Schedule B | $2,066.20 |
| Schedule D | $ 309.93 |
| Schedule E | $ 476.67 |
| Total Allowed: | $2,852.80 |

A TSP does not become a CDA claim until the parties are at an impasse. *See James M. Ellett Construction Co. v. United States*, 93 F.3d 1537, 1544 (Fed. Cir. 1996). When the CO's 24 April 2014 decision denied in its entirety Magwood's $72,283 TSP (finding 9), which amount required no CDA certification, the parties plainly were at an impasse, and Magwood's TSP became a CDA claim. *See Ensign-Bickford Aerospace & Defense Co.*, ASBCA No. 58671, 14-1 BCA ¶ 35,599 at 174,407-08 (impasse can occur when one party evidences a desire to begin the disputes process or a unilateral determination by the CO) (*dicta*).

## CONCLUSION

The appeal is sustained in the amount of $2,852.80 with CDA interest thereon starting 24 April 2014. The balance of the costs claimed is denied.

Dated: 16 September 2014

DAVID W. JAMES, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59293, Appeal of Magwood Services, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9