ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| Stobil Enterprise | ) ASBCA Nos. 61688, 61689 |
| | ) |
| Under Contract No. FA3016-18-P-0074 | ) |

APPEARANCE FOR THE APPELLANT: Mr. Billie O. Stone
CEO

APPEARANCES FOR THE GOVERNMENT: Jeffrey P. Hildebrant, Esq.
Air Force Deputy Chief Trial Attorney
Heather M. Mandelkehr, Esq.
Lt Col Scott A. Van Schoyck, USAF
Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE SHACKLEFORD ON APPELLANT'S MOTION FOR RECONSIDERATION

Appellant timely moves for reconsideration of our Rule 12.2 decision dated January 18, 2019, wherein we denied appellant's appeal from the denial of a monetary claim filed by appellant and also denied the appeal from the termination for default of appellant's contract. Familiarity with the facts of our previous decision is presumed.[*] The government replied to the motion for reconsideration on March 8, 2019, and appellant responded thereto on March 25, 2019. On May 29, 2019, appellant filed a motion for leave to file amended motion for summary judgment with memorandum of law in support. Leave to file said motion is denied as the record is closed. Moreover, the motion is irrelevant to the issue presented here. Appellant elected to proceed in these appeals under Board Rule 12.2 for small business concerns. A decision under Rule 12.2 shall have no value as precedent, and in the absence of fraud, shall be final and conclusive and may not be appealed or set aside.

Stobil Enterprise (Stobil) must demonstrate a compelling reason for the Board to modify its decision, as the standard we apply for reconsideration is that the moving party must establish that the underlying decision contained mistakes in our findings of fact or errors of law, or that newly discovered evidence warrants vacating our decision. Motions for reconsideration are not intended to provide a party with an opportunity to reargue issues previously raised and denied. *See, Parsons Evergreene, LLC*, ASBCA No. 58634, 19-1 BCA ¶ 37,251 at 181,310, and cases cited therein.

Appellant points to the same facts which were before us in deciding this case initially; they are not newly discovered facts. And, appellant repeats arguments

---

[*] All responses to findings cited herein relate to the earlier decision found at *Stobil Enterprise*, ASBCA No. 61688, 61689, 19-1 BCA ¶ 37,242.

already made. In a Rule 12.2 decision, as here, we typically issue summary findings of fact and conclusions of law in order to decide the appeal in a relatively short period of time. There is no need for a point-by-point recitation of all the possible facts and all the contentions of appellant. We did not do so in our previous decision and will not do so on reconsideration. However, so that appellant more fully understands why its appeals were denied, we expand on our analysis on reconsideration.

This case turned upon whether the contract requiring replacement of an overhead door included replacement of an inoperative drum as well at no additional cost to the government. It was a contract interpretation question involving whether the drum was part of the "electrical operators IAW SOW dated 9 January 2018." (Finding 9) The statement of work (SOW) required the removal and installation of a "new Overhead Door, hardware, and electric motors" also referred to as electric operators (finding 3). It was to be fully assembled and ready for use upon delivery (finding 2).

In its Rule 11 brief, the government proposed a finding as follows:

> 20. On May 29, 2018, TSgt Consola called TexDoor LTD, the manufacturer of the door that appellant ordered, and requested a quote for the same steel overhead door and electrical operators that were required by Appellant's contract. G-2 at 1. After TexDoor provided a quote on May 30, TSgt Consola inquired whether the hood, drum plates, and door rails came standard with the door. G-2 at 1. TexDoor responded affirmatively that those items came standard with the door. G-2 at 1.

(Gov't br. at 7)

While the evidence set forth in that proposed finding supports the government's view of the case, it is diminished by its hearsay nature. Appellant's complaint iterates allegations in the contracting officer's final decision and then responds thereto in an apparent effort to show its opposite view of the industry standard. Appellants alleges that the contracting officer "Stated the items in dispute were considered part of the door" and then takes issue with that statement by pointing out, as it has throughout this litigation, that "drum" was not mentioned in the contract. (Compl. at 3) Next, appellant iterates the contracting officer, "Stated that the items were in accordance with standard industry practices," and then takes issue with that statement by averring as follows:

> Note: *There's no such industry practice. Stobil Enterprise has specialized in commercial and hanger [sic] door installations and repairs for over 20 years, and clearly knows what is required for a new door installation, as well*

2

> *as, a repair replacing damaged and or inoperative door parts. For evidence in this cause the Contractor requested its Distributor (TEXDOOR of San Antonio, Texas/Manufactures' Direct Distributor) to provide verification of such practice stated by the Contracting Officer...see Exhibit B.*

(Compl. at 3) Exhibit B provides no support for that view of the industry practice. Said exhibit is a three part email dated May 23, 2018, between Stobil and TexDoor, as follows:

Stobil to TexDoor:

> Got a serious issue with the Government and hope you can help. You recently gave me a quote for a new drum and plates. These items weren't a part of my initial request for a curtain, guides, & operator. The Government is stating that the curtain should have come with a new drum and plates according to industry standards. The Government state's that their market research with San Antonio door company's [sic] indicates such. Can you confirm this policy as factual specifically with TexDoor. My work has stopped pending this issue. Any understanding would be helpful.

TexDoor to Stobil:

> Good morning. I'm not sure which companies were included in this research. We stock and sell parts for overhead doors to companies all over Texas.

Stobil to TexDoor:

> I didn't think so....

(Compl. and ex. A-B at 1)

While Stobil seems pleased with the TexDoor response, we fail to see how it advances appellant's position. Thus, we are left with a neutral response from TexDoor to Stobil, a hearsay statement clearly supporting its position from the Air Force, and Mr. Stone's self-serving unsworn statement that his 20 years in the business means he knows what is needed for new and replacement doors. The government's final decision dated June 25, 2018, denied appellant's monetary claim, stating in part:

3

> The claim is denied. The SOW included in the subject contract required the contractor to remove one steel overhead door and replace with a new heavy duty rolling overhead door, to include all materials, incidentals and electric motors. The contract does not allow for the reuse or repair of any of the existing parts. The items in dispute are considered part of the door and, in accordance with standard industry practices, are provided with any commercial overhead door. Moreover, prior to award Stobil Enterprise confirmed that their quote included the drum and steel plates.

(R4, tab 17 at 3)

As the proponent of its claim, appellant has the burden of proving liability and damages (*Wilner v. United States*, 24 F.3d 1397, 1401-02 (Fed. Cir. 1994) (en banc)) and thus had to show that the drum was not part of the door and that it was not industry practice to include the drum when replacing the door. Appellant has failed to meet its burden of proof as to liability.

Even if we decided otherwise, appellant still would not be entitled to recover damages as this appeal was to be decided on entitlement and quantum; as such, appellant had the burden of proving its costs which is much more than merely stating that it is owed $126,000. Appellant has not provided any proof of damages in this record, nor have we found any such proof.

Further, even if we decided otherwise on entitlement, appellant would still not prevail on converting the termination for default to a termination for convenience. The default clause required appellant to continue the work when disputes arose. Appellant did not complete the work by the extended contract completion date, and thus the termination was proper and the default inexcusable.

Stobil's motion for reconsideration is denied.

Dated: July 23, 2019

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

4

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61688, 61689, Appeals of Stobil Enterprise, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals
