ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Lavender Co. | ) | ASBCA No. 62163 |
| | ) | |
| Under Contract No. M00146-18-D-X501 | ) | |

APPEARANCE FOR THE APPELLANT:     Mr. Hong Sup Kim
                                   President

APPEARANCES FOR THE GOVERNMENT:   Craig D. Jensen, Esq.
                                   Navy Chief Trial Attorney
                                   Pamela Jean Castellano, Esq.
                                   Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE O'CONNELL

Appellant, Lavender Co. (Lavender), seeks allegedly unpaid amounts on a contract for the provision of red shop rags. The parties elected to waive a hearing and to submit this appeal on the record under Board Rule 11. The Board denies the appeal.

FINDINGS OF FACT

1. On November 7, 2017, the United States Marine Corps (USMC) awarded Lavender the above-referenced requirements contract (R4, tab 2 at 2). The contract provided for the issuance of delivery orders for laundry rental services of red shop rags to be used at the 2d Marine Air Wing, Marine Corps Air Station New River, Jacksonville, NC (R4, tab 2 at 5, 9).[1]

2. The performance work statement (PWS) provided that the red shop rags were to be made of cotton and were to be "laundered and dried by the best commercial practices . . . free of paint, oil, grease, metal, plastics or other foreign materials" with "no objectionable odor" and "free of holes and torn, frayed or tattered edges" (R4, tab 2 at 5). It further provided that any rags containing hazardous waste or materials generated by the government were "the responsibility of the Contractor for storage, disposal[], and/or cleaning" (id. at 6). On November 3, 2017, Lavender advised the government that "[h]azardous material handling is not a problem . . ." (R4, tab 13 at 3).

---

[1] R4 citations are to the .pdf page number in the electronic file.

3. The PWS provided that Lavender would deliver the required number of clean rags to each specified location on a weekly basis and pickup soiled rags at that time (R4, tab 2 at 6). Lavender understood that deliveries would be required at multiple locations each week because it advised a USMC contracting official on November 6, 2017 (the day before contract award), that "[w]e will make weekly pickup and delivery at each building at the base" (R4, tab 13 at 5).

4. The contract contained two contract line item numbers (CLINs). CLIN 0001 provided that Lavender would be paid $0.06 per rag up to an estimated quantity of 1,586,520 rags, which would result in payment of up to $95,191.20. CLIN 0002 provided for payment of $0.18 for each rag lost or destroyed, up to 10% of the total quantity without prior authorization of the contracting officer, for a maximum payment of $28,557.36. (R4, tab 2 at 5)

5. On November 22, 2017 (15 days after award), the contracting officer issued delivery order M00146-18-F-2800 (R4, tab 3 at 2). This order provided for the delivery of up to 7,375 rags per week to Marine Air Logistics Squadron-29 (MALS-29), with a performance period from November 27, 2017, to November 26, 2018. During this period, it provided for delivery of up to 383,500 rags and replacement of 38,350 with payment of up to $23,010 for CLIN 0001 and $6,903 for CLIN 0002 (*id*. at 4). The delivery order specified 10 buildings and the number of rags to be delivered weekly to each location (*id*. at 4-5).

6. Throughout the contract term, the various units Lavender was servicing complained about its performance. The most salient complaint given the nature of the dispute is that Lavender failed to deliver rags every week. On February 1, 2018, a customer complained that "[t]he rag situation is terrible . . . we only get a shipment once every 2-3 weeks instead of every week . . . ." (R4, tab 12 at 3) On February 6, 2018, a customer stated that after receiving a total of 1,500 rags one week, it did not hear from Lavender again for a month and only succeeded in getting more rags when a worker saw the company's representative elsewhere on the air station (*id.* at 5-6).

7. Another significant problem emerged on January 23, 2018, when Lavender informed the USMC that about 15% of the rags it was receiving were soiled with grease and that it could not clean them. Lavender asked if the units could discard those rags. The USMC denied the request, observing that the contract provided that the rags were to be laundered and that the contract capped replacement at 10%. (R4, tab 13 at 16-17)

8. Thereafter, it appears that Lavender simply returned the unclean rags to the units. The following complaints are examples: "the rags appear[] to be in the same condition they were picked up. They do not appear clean at all. They look and smell like they have all been used recently" (R4, tab 12 at 3-4); "[t]he condition of the rags we

received were still covered in grease and appeared to not of been washed.  This affects daily operations because maintainers are not able to use clean rags during daily operations" (*id.* at 6); "[a]bout 25% of the rags we get look they haven't even been washed. They look just as dirty as when they were picked up.  We cannot use them" (*id.* at 8).

9.  Despite these problems, on March 21, 2018, the contracting officer awarded Lavender a second delivery order (M00146-18-F-2804) that provided for supply of up to 7,880 rags each week to MALS-26 with a performance period of March 21, 2018, to March 20, 2019.  The delivery order provided for payment of up to $24,585.60 for CLIN 0001 and $7,375.68 for CLIN 0002.  (R4, tab 4 at 2, 4-5)

10.  On May 23, 2018, the contracting officer sent Lavender a cure notice.  He stated that at least 25% of the delivered rags still contained waste and that Lavender had failed to maintain a weekly delivery schedule.  He stated that Lavender must respond within 14 days with a plan to improve performance or the government would consider terminating the contract for cause.  (R4, tab 7 at 2)

11.  Lavender responded to the cure notice on May 24, 2018.  Among other things, it stated that it had been having base access issues but that they had been resolved.  It also contended that some of the rags that it had supplied may have been discolored but that they were not dirty.  (R4, tab 8 at 2-3)

12.  The cure notice did not result in a satisfactory improvement in performance. On June 27, 2018, one unit wrote:  "I have followed up with my Tool Room and we are still unsatisfied with the Red Rag service.  Currently we do not have any red rags and we are utilizing cloths to utilize in place of red rags.  HMH-366 requests to return with previous contract."  (R4, tab 12 at 10-11)  On July 24, 2018, another unit wrote:  "we have not received any rags from the contractors [sic] for about a month.  We would require at least 500 replacement rags to continue normal operations for our squadron" (*id.* at 17-18).

13.  The record contains the delivery records only for the period from August 2, 2018, to December 27, 2018.  During this period, there were no weeks in which Lavender delivered red rags to every unit required by the delivery orders; for most weeks it delivered to fewer than half the units (R4, tab 9 at 2-19).

14.  The MALS-29 task order expired in November 2018.  While the MALS-26 task order provided for performance until March 2019, Lavender performed its last delivery on December 6, 2018 (R4, tab 9 at 19).  Thus, it failed to perform the last 14 deliveries.

3

15. Lavender submitted a certified claim dated March 20, 2019 (R4, tab 11 at 1, 8). It sought what it referred to as the "contract amount allocation of the Delivery Orders" or $61,874.28, minus the amount paid of $28,239.60. In addition, it sought an additional $61,874.28 for "loss of potential income," bringing the total claim amount to $95,509.20. (*Id.* at 4) Lavender sought relief based on a breach of contract theory, as well as "coercion/duress." The latter theory was based on the contracting office's efforts to get Lavender to sign a termination for convenience by stating that a failure to sign a termination for convenience modification would result in a termination for default. (*Id.* at 5-6)

16. The contracting officer denied the claim in a final decision dated August 20, 2019 (R4, tab 1 at 4-10). He concluded that the USMC had overpaid Lavender but stated that the USMC would not seek to recover those overpayments. Presumably, this was because he also found that the government had failed to keep track of deliveries from January through July 2018 and had paid the full amount of invoices despite Lavender's failure to deliver the actual number of rags for which it invoiced the government. He concluded that Lavender was due $2,648.10 on delivery order M00146-18-F-2800 and nothing on M00146-18-F-2804. (*Id.* at 9)

17. Lavender filed a timely appeal on September 4, 2019.

## DECISION

The record is devoid of evidence to support a claim for loss of potential income in the amount of $61,874.28. The Board denies this aspect of appellant's appeal.

With respect to the claim for unpaid work, if Lavender had delivered the maximum number of towels and billed for replacement of 10% of the towels for the full 12 months of each delivery order, it would have been entitled to $61,874.28 (*see* findings 5, 9). However, because Lavender did not perform after December 6, 2018, when there were 14 weeks remaining on the MALS-26 delivery order, the maximum amount would be reduced by $8,604.96[2] to $53,269.32.[3]

---

[2] 7,880 x .06 = 472.80 (CLIN 0001 weekly amount)
788 x .18 = 141.84 (CLIN 0002 weekly amount)
472.80 + 141.84 = 614.64 (CLIN 0001 + CLIN 0002 weekly amounts)
614.64 x 14 weeks = 8,604.96

[3] This number should be reduced even further because Lavender did not make its first delivery to MALS-29 until December 13, 2017, or three weeks after the start date of the task order (R4, tab 13 at 12-13) but, given our ultimate determination below, it is not necessary to further refine our calculations.

In their briefs, neither party presents precise calculations that demonstrate the amount to which Lavender is entitled to be paid, or the amount which the government has already paid. As the party with the burden of proving liability and quantum, this has consequences for Lavender. *See Wilner v. United States*, 24 F.3d 1397, 1401 (Fed. Cir. 1994) (*en banc*).

From January to July 2018, the only evidence of Lavender's compliance with its delivery responsibilities are the emails from the units. They indicate (at best) spotty compliance, with a number of instances where buildings went weeks without deliveries, and when Lavender made deliveries, the units received many soiled rags (findings 6-8, 12). From August to December 2018, the delivery records are more precise and demonstrate the magnitude of Lavender's poor performance (finding 13). For example, for the delivery on August 2, 2018, Lavender has signed acceptances from two of nine MALS-26 buildings, and three of ten MALS-29 buildings. For August 9, 2018, there are signed acceptances for three of nine MALS-26 buildings and four of ten MALS-29 buildings. For August 16, 2018, the numbers are two of nine MALS-26 buildings and two of ten MALS-29 buildings. For August 23, 2018, it is four of nine MALS-26 buildings and three of ten MALS-29 buildings. (R4, tab 9 at 3-6) Based on the Board's review of the record as a whole, Lavender has failed to prove that it filled more than half of the USMC's rag requirements, even without taking into account the soiled rags or Lavender's complete failure to deliver to MALS-26 after December 6, 2018.

Lavender stated in the claim that the government has already paid $28,239.60 (finding 15). This is more than half of the total amount ($53,269.32) that we concluded Lavender could have earned based on the actual period of its performance. Lavender has not carried its burden of proving that it is entitled to any additional payment. Thus, the Board disagrees with the contracting officer that Lavender is entitled to payment of an additional $2,648.10 on delivery order M00146-18-F-2800 because, among other things, the contracting officer's calculation fails to take into account all of the missed deliveries from January to July 2018 or the quality of rags delivered (finding 16).

Appellant's other arguments are unsupported. It contends that the current (successor) red rag contract has "a list of potential hazardous materials" including "petroleum and silicone grease . . . ." Lavender suggests that for the contract on appeal, the contracting officer manipulated the bidders: "the list of hazardous materials was intentionally omitted by the respondent for soliciting lower contract price. With common sense, laundering, a.k.a. water base washing, a chunk of industrial grease is not practical . . . ." (App. br. at 2) It contends that the presence of "industrial grade grease" on the rags was "absolutely unexpected" (*id.* at 3).

One might think that a contractor that agreed to furnish and launder rags for shops at a Marine Air Station would expect, even if no further information were provided, that

the rags might be returned with grease on them. In any event, the contract clearly informed bidders that they would be required to return the rags "laundered and dried by the best commercial practices . . . free of paint, oil, grease, metal, plastics or other foreign materials . . . ." Appellant was aware of this prior to award because it advised the USMC that "hazardous material handling is not a problem . . ." (Finding 2). Thus, the Board is unconvinced by Lavender's contention that the presence of grease on the rags was unexpected.

Finally, Lavender's claim also alleges "coercion/duress" by the government because, in attempting to obtain Lavender's agreement to a termination for convenience, the contracting office stated that the alternative would be a termination for default (finding 15). However, there is no evidence that the parties ever agreed to a termination for convenience or that the government terminated the contract for default. The Board sees no basis for awarding damages for the government's reference to a termination for default when the government never issued the default termination and the record contains such abundant evidence of appellant's poor performance and cessation of deliveries.

CONCLUSION

The appeal is denied.

Dated: October 27, 2021


MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

6

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62163, Appeal of Lavender Co., rendered in conformance with the Board's Charter.

Dated: October 27, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals